NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Belknap
No. 2013-612

JOSEPH W. TURNER, INDIVIDUALLY AND AS TRUSTEE

v.

SHARED TOWERS VA, LLC & a.

Argued: November 12, 2014
Opinion Issued: December 19, 2014

Cook, Little, Rosenblatt & Manson, p.l.l.c., of Manchester (Arnold Rosenblatt and Kathleen M. Mahan on the brief, and Ms. Mahan orally), for the petitioner.

Bernstein, Shur, Sawyer & Nelson, P.A., of Manchester (Christopher G. Aslin and Gregory E. Michael on the brief, and Mr. Michael orally), for the respondents.

DALIANIS, C.J. The respondents, Shared Towers VA, LLC (Shared Towers) and NH Note Investment, LLC (NH Note), have appealed, and the petitioner, Joseph W. Turner, individually and as trustee of the Routes 3 and 25 Nominee Trust, has cross-appealed, orders of the Superior Court (O'Neill, J.) following a bench trial on the petitioner's petition for a preliminary injunction enjoining a foreclosure sale and for damages and reasonable attorney's fees.

The parties' dispute centers around a commercial construction loan agreement and promissory note secured by a mortgage, pursuant to which the petitioner was loaned $450,000 at 13% interest per annum to build a home. The respondents argue that the trial court erred when it: (1) determined that they would be unjustly enriched if the court required the petitioner to pay the amounts he owed under the note from November 2009 until April 2011; (2) applied the petitioner's $450,000 lump sum payment to principal; (3) excluded evidence of the petitioner's experience with similar loans; (4) ruled that, because the promissory note failed to contain a "clear statement in writing" of the charges owed, as required by RSA 399-B:2 (2006), the respondents could not collect a $22,500 delinquency charge on the petitioner's lump sum payment of principal; and (5) denied the respondents' request for attorney's fees and costs. The petitioner contends that the trial court erroneously concluded that the respondents' actions did not violate the Consumer Protection Act (CPA). See RSA ch. 358-A (2009 & Supp. 2013). We affirm in part, reverse in part, vacate in part, and remand.

I. Facts

The trial court found, or the record establishes, the following facts. The petitioner owns property on Marks Island in Gilford and, in 2009, sought financing to construct a home on one of his lots. Because the home was to be constructed on an island, he was unable to obtain a construction loan with conventional financing. Financial Resources Mortgage, Inc. (FRM) procured a construction loan for the petitioner from Mark Butler, a private lender. On April 9, 2009, the petitioner and Butler executed: (1) a commercial construction loan agreement; (2) a promissory note; (3) a mortgage security agreement and assignment; and (4) a collateral assignment of rents and leases. Under the loan agreement, Butler agreed to loan the petitioner $450,000 as "a bridge loan to facilitate the completion of construction" of the home. The agreement required the petitioner to "pay [Butler] in monthly installments on interest only on the total amount of funds loaned." The loan was secured by the mortgage and the collateral assignment of rents and leases. The promissory note required the petitioner to repay the loan in full, with 13% interest, in one year. The note obligated him to pay Butler "interest only in Twelve (12) consecutive monthly payments of $4,875.00 each." The first payment was due on June 1, 2009. The final payment, consisting of all principal, accrued interest, and charges, was due May 1, 2010. The note provided that if the petitioner defaulted on the payment of interest and principal due under the note, and failed to cure the default within a specified period of time, "the entire unpaid balance of principal and interest shall, at the option of the Holder, become due and payable at once without demand or notice."

The mortgage and note associated with the loan were assigned three times. They were first assigned in May 2009 by Butler to Dodge Financial, Inc.,

the then-trustee of BD 2009 Realty Trust. In November 2009, Kamal Doshi, another trustee of BD 2009 Realty Trust, assigned the mortgage and note to Shared Towers. Finally, in June 2011, Shared Towers assigned the mortgage and note to NH Note.

From April to October 2009, the petitioner made payments consistent with the terms of the loan agreement and note. He stopped making payments in November 2009. In December 2009, the petitioner received a letter from the trustee appointed in the involuntary bankruptcy of FRM, which stated, in pertinent part:

> We understand that you may have borrowed money from FRM . . . or an entity or individual affiliated or related to [FRM]. If you make or are obligated to make monthly payments to any such entity or individual, you are hereby directed to make all such future payments directly to [the bankruptcy trustee].
>
> **Please note that any payments made directly [to] any other entity or individual, will NOT count as a credit to your underlying obligations. All such payments must be made to this office in order for you to receive appropriate credit. You will NOT receive credit for any payments even if a new Trustee has purportedly been appointed for any Trust that may hold the mortgage on your property.**

A few weeks later, the petitioner received another letter from the trustee enclosing a bankruptcy court order. This letter stated, in pertinent part: "If you have borrowed money from FRM . . . or from any trust or entity affiliated or related to FRM . . . , the Order requires that you make all monthly payments, all payments of principal, and all principal payoffs to" the bankruptcy trustee. However, having also received demands from Butler and Doshi, the petitioner did not make any payments.

In April 2011, a settlement was reached among Butler, Doshi, Shared Towers, and the bankruptcy trustee (who was also the bankruptcy trustee for Dodge Financial, Inc. and BD 2009 Realty Trust), pursuant to which, Doshi, on behalf of Shared Towers and NH Note, took ownership of the petitioner's loan, mortgage, and promissory note.

On April 27, 2011, Shared Towers notified the petitioner that it was now the holder of the loan and the debt and that the petitioner was in default of his obligations thereunder. Shared Towers informed the petitioner that the note had matured on May 1, 2010, and that pursuant to the note, he owed: (1) $450,000 in principal; (2) $92,625 in interest; and (3) $24,206.25 in delinquency charges, which included a $22,500 charge for late payment of the lump sum principal amount. Shared Towers notified the petitioner that if he

3

failed to pay those amounts on or before May 1, 2011, Shared Towers would "pursue all of its rights and remedies" under the loan documents, including, but not limited to, commencing foreclosure proceedings under the mortgage. To defer the foreclosure sale, the petitioner paid Shared Towers $15,000. The petitioner instituted the instant action in July 2011.

In July 2011, the trial court held a hearing on offers of proof on the petitioner's request for a preliminary injunction to enjoin the foreclosure sale. At the hearing, the petitioner "conceded that the principal amount . . . which [he] legitimately owe[s] is $450,000.00." However, he disputed "interest charges, late fees and attorney fees which have added approximately $100,000 to the debt." The trial court ordered the petitioner to pay the $450,000 and ordered the respondents not to foreclose on the property until further court order. In response to the respondents' motion for clarification and/or reconsideration, the trial court clarified that the $450,000 payment "shall be applied only as determined at the final hearing in this matter." Thereafter, in addition to remitting the $450,000 principal to the respondents, the petitioner paid $34,125 in interest payments from an escrow account.

The trial court conducted a bench trial on the petitioner's remaining claims for relief. The court first decided that the respondents were not entitled to a delinquency charge on the petitioner's late payment of principal because the promissory note failed to contain a "clear statement in writing" that the charge would so apply. RSA 399-B:2. The trial court next concluded that the respondents were not entitled to any payments from November 2009 until April 2011 because, during that time, ownership of the loan and note, was "in flux." The court determined that because of that fact, "[i]nterest payments, principal payments, and associated penalties . . . should have been tolled from November 2009 through April 2011," and that, if the petitioner were now ordered to pay the respondents the payments that were due from November 2009 through April 2011, the respondents would be unjustly enriched. The court further found that the $450,000 that the petitioner remitted to the respondents pursuant to the preliminary injunction order "satisfied the principal amount owed." With regard to the petitioner's damages claim, the trial court determined that the respondents did not violate the CPA.

The trial court ordered the parties to "provide . . . their respective computations of total amounts paid to date and outstanding amounts due consistent with the [court's] findings." The respondents argued that the petitioner owed four months of interest payments and the corresponding 5% penalty on each such payment, for a total of $19,500 in interest payments and $975 in penalty payments. They also argued that they were entitled to $77,836 in defense costs, including legal fees. The petitioner conceded that he owed three months of interest payments and two 5% penalty payments, for a total of $14,625 in interest payments and $487.50 in penalties. The petitioner argued that, after subtracting the $15,000 he paid to defer the foreclosure, he owed

4

the respondents a total of $112.50.  Based upon the parties' computations, the trial court determined that the petitioner owed interest and a 5% penalty for a portion of April 2011, and all of May, June, and July 2011, for a total of $16,891.88.  The court subtracted from this amount the $15,000 the petitioner paid to defer the foreclosure, and, thus, ordered him to pay the respondents $1,891.88.  The trial court denied the respondents' claim for attorney's fees and costs.  This appeal and cross-appeal followed.

## II.  Respondents' Appeal

### A.  Unjust Enrichment

The respondents first argue that the trial court erred when it found that they would be unjustly enriched if the petitioner were required to pay "amounts that came due during the time that ownership of the loan was in dispute." "The propriety of affording equitable relief in a particular case rests in the sound discretion of the trial court." Axenics, Inc. v. Turner Constr. Co., 164 N.H. 659, 669 (2013) (quotation omitted).  Consequently, we review a trial court's equitable determination for an unsustainable exercise of discretion.  Id. "Although the award of equitable relief is within the sound discretion of the trial court, that discretion must be exercised, not in opposition to, but in accordance with, established principles of law." Id. (quotation omitted).

The respondents argue that unjust enrichment is not available as a remedy here because the underlying loan agreement and promissory note "controlled and remained in full force and effect." (Capitalization and bolding omitted.)  They are correct.  Unjust enrichment is an equitable remedy that is available when an individual receives "a benefit which would be unconscionable for him to retain." Id. (quotation omitted).  "It is not a boundless doctrine, but is, instead, narrower, more predictable, and more objectively determined than the implications of the words unjust enrichment." Id. (quotation omitted).  "One general limitation is that unjust enrichment may not supplant the terms of an agreement." Id.  This is so because "restitution is subordinate to contract as an organizing principle of private relationships, and the terms of an enforceable agreement normally displace any claim of unjust enrichment within their reach." Id. (quotation, ellipsis, and brackets omitted); see Restatement (Third) of Restitution and Unjust Enrichment § 2 comment c at 17 (2011).  Thus, a "court cannot allow recovery under a theory of unjust enrichment when there is a valid, express contract covering the subject matter at hand." Axenics, 164 N.H. at 669.

Here, the dispute over the ownership of the loan agreement and promissory note did not eliminate the petitioner's obligations under them. Under the loan agreement and promissory note, the petitioner was required to pay $4,875 monthly.  There was never a dispute regarding the petitioner's obligation to make those payments; the dispute was about to whom the

5

payments should be made.  Under those circumstances, contrary to the trial court's decision, the petitioner's obligation to make the payments was not tolled.  Because the loan agreement and note remained viable, it was error for the trial court to have afforded the petitioner a remedy under an unjust enrichment theory.

The petitioner argues that he was entitled to such a remedy because "there is no language in the loan agreement which in any way addresses the series of events that led to [his] unjust enrichment claim here."  He asserts that neither the loan agreement nor the promissory note directed "the parties on the appropriate behavior when the loan was, for all intents and purposes, simply frozen for a period of eighteen months, when not two, but three different parties were fighting over ownership of the Note and demanding payments, and where the borrower, attempting to get out of the exceptionally high interest rate associated with this bridge loan, simply was unable to obtain conventional financing."  Thus, he reasons, this case fits within an exception to the general rule that one may not recover under an unjust enrichment theory when there is a valid contract in place that pertains to the same subject matter.  See id. at 669-70.  Here, he argues, "there was no agreement in place" during the time in which ownership of the loan and note were in dispute, "and thus, no basis for [the] respondents' demanded retroactive interest, among other charges and penalties."  Under those circumstances, he asserts, the respondents' demands "were outside the scope of the agreement," which makes unjust enrichment an available remedy.

The exception to which the petitioner refers allows contracting parties to recover under an unjust enrichment theory when "the benefit received is outside the scope of the contract."  Id. at 670.  Here, to the contrary, the benefit the petitioner received – use of the money loaned to him under the loan agreement – is the very subject of the loan agreement.  Similarly, the benefit the respondents were entitled to receive – the petitioner's interest-only payments – is the very subject of the promissory note.  The fact that the loan agreement and promissory note were silent with respect to the course the petitioner should take if a dispute arose about the ownership of those obligations, "does not open the door for a quasi-contract remedy."  Anwar v. Fairfield Greenwich Ltd., 831 F. Supp. 2d 787, 796-97 (S.D.N.Y. 2011) (deciding, under Florida law, that "the Form Contract" precluded the plaintiffs from recovering under an unjust enrichment theory even though that contract was silent with regard to the "extreme contingency" raised in their lawsuit).

B.  Payment of $450,000

The respondents next argue that the trial court erred when it applied the petitioner's payment of $450,000 to principal instead of to interest.  They contend that the court's determination is contrary to the promissory note, which provides that "[a]ll payments . . . shall be applied first to charges and/or

6

fees, if any, then to accrued interest . . . , then to principal." The petitioner counters that the respondents' argument is "illogical given the circumstances under which the preliminary injunction order was entered and payment made."

The trial court made its decision with regard to the payment of $450,000 in connection with its conclusion that the petitioner was entitled to a remedy under an unjust enrichment theory. Because we cannot determine how the trial court would have ruled upon this issue had it not considered relief under that equitable theory, and because, given the nature of the parties' arguments, resolving this issue requires fact finding that must be done by the trial court in the first instance, we vacate this part of its order and remand for further proceedings. On remand, the trial court shall consider the merits of the respondents' assertion that the promissory note, in fact, required that the payment be applied first to charges and/or fees or accrued interest before being applied to principal.

### C.  Evidence of Petitioner's Experience with Similar Loans

The respondents next contend that the trial court erroneously excluded evidence of the petitioner's experience with similar loans. On the first day of trial, the respondents asked the court to review the petitioner's responses to their requests for admission and to rule upon the validity of his objections thereto. The petitioner objected to several requests on relevancy grounds, and the court upheld those objections. The respondents argue that in so doing, the trial court erred. However, the respondents have not provided either their requests for admission or the petitioner's responses as part of the record on appeal. It is the burden of the respondents, as the parties appealing the trial court's decision on this issue, to provide a sufficient record. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004); see also Sup. Ct. R. 13. Absent the requests for admission and the petitioner's responses, we must assume that the record supports the trial court's determination that the requests at issue sought irrelevant information. See Bean, 151 N.H. at 250.

### D.  Delinquency Charge

The respondents next argue that the trial court erroneously precluded them from recovering a 5% delinquency charge on the petitioner's late lump sum payment of principal because that charge was not disclosed properly within the meaning of RSA 399-B:2. RSA 399-B:2 provides:

> Any person engaged in the business of extending credit shall furnish to each person to whom such credit is extended, concurrently with the consummation of the transaction or agreement to extend credit, a clear statement in writing setting forth the finance charges, expressed in dollars, rate of interest, or monthly rate of charge, or a combination thereof, to be borne by

such person in connection with such extension of credit as originally scheduled.

"'Finance charges' includes charges such as interest, fees, service charges, discounts, and other charges associated with the extension of credit." RSA 399-B:1, II (2006).

The loan agreement provided that in the event that the petitioner defaulted, the lender could "impose . . . a delinquency charge as set forth in the Note." The note stated that the lender could impose "a delinquency charge at the rate of Five percent (5%) on each installment of principal and/or interest not paid on or before fifteen (15) calendar days after such installment is due." The petitioner also received a "STATEMENT OF FINANCE CHARGES[:] NEW HAMPSHIRE RSA 399-B" (emphasis omitted), which provided, in pertinent part:

The interest rate is to be fixed at Thirteen Percent (13%) per annum for One (1) Year from the date of the Note. During the term of the Note, payment of principal and interest shall be made in monthly installments of $4,875.00 each. . . . The amount of the monthly payments will always be sufficient to repay interest only and at the conclusion of the One (1) Year period[,] the principal, plus all accrued interest, fees and expenses of the loan shall be payable in full. On May 1, 2010, the principal balance and any accumulated interest shall be due and payable in full. All payments made under the Note shall be applied first to charges and/or fees, if any, then to accrued interest at the rate stated above, then to principal.

In addition, Lender may impose upon the Borrower a delinquency charge at the rate of Five Percent (5%) on each installment of interest not paid on or before fifteen (15) calendar days after such installment is due.

The trial court concluded that the delinquency charge was a "finance charge" within the meaning of RSA 399-B:1, II, and, therefore, pursuant to RSA 399-B:2, had to be disclosed in a "clear statement in writing," furnished to the petitioner "concurrently with" the loan agreement and promissory note. The trial court further concluded that the respondents failed to provide a "clear statement" to the petitioner that the 5% delinquency charge would apply to principal payments because the RSA chapter 399-B statement of finance charges stated that the delinquency charge was a charge "on each installment of interest," while the promissory note stated that it was a charge "on each installment of principal and/or interest." The court decided that, although the documents made clear that a delinquency charge applied to the monthly interest-only payments, they did not make clear that such a charge also

8

applied to the lump sum payment of principal. Thus, the trial court ruled that, pursuant to the statement of finance charges, the respondents were entitled to collect a delinquency charge only on delinquent monthly interest payments.

The respondents first argue that the trial court erred by determining that the delinquency charge constituted a "finance charge" within the meaning of RSA 399-B:1, II. "We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole." Frost v. Comm'r, N.H. Banking Dep't, 163 N.H. 365, 374 (2012). "When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used." Id. "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. "We also interpret a statute in the context of the overall statutory scheme and not in isolation." Id. We review issues of statutory interpretation de novo. Id.

Here, we agree with the trial court that the delinquency charge is a "finance charge" within the meaning of RSA 399-B:1, II because it is a "charge" associated with the respondents' "extension of credit" to the petitioner. RSA 399-B:1, II. The respondents assert that because such a charge on the petitioner's lump sum payment would be incurred only "after the loan was scheduled to be repaid," it is not a "finance charge" that had to be disclosed. We are not persuaded. See DeCato Brothers, Inc. v. Westinghouse Credit Corp., 129 N.H. 504, 508-09 (1987) (holding that a prepayment penalty constituted a finance charge within the meaning of RSA 399-B:1, II, and that the failure to disclose such a penalty in a clear statement in writing violated RSA 399-B:2).

Alternatively, the respondents argue that the promissory note and statement of finance charges satisfied RSA 399-B:2 with regard to imposing a delinquency charge on the petitioner's lump sum payment of principal. We disagree. As the trial court observed, "[c]onflicting disclosures cannot satisfy RSA 399-B:2's stated requirement of providing 'a clear statement' because conflicting information is by its very nature unclear." Here, the information provided to the petitioner made clear that the delinquency charge would apply to his monthly interest-only payments. However, that information did not make clear that the charge would also apply to his lump sum payment of principal. Accordingly, the trial court did not err when it allowed the respondents to recover a 5% penalty on delinquent interest payments, but precluded them from recovering a 5% penalty on the delinquent lump sum payment of principal.

E. Attorney's Fees and Costs

Finally, the respondents argue that the trial court erroneously disallowed recovery of their reasonable attorney's fees and costs. After the bench trial, the

trial court ordered the parties to "provide . . . their respective computations of total amounts paid to date and outstanding amounts due." In complying with that order, the respondents included their reasonable attorney's fees and costs in their "computation of . . . outstanding amounts due." Specifically, they sought $77,836 in fees and costs associated with defending against the petitioner's action and $25,945 in fees and costs associated with their collection and foreclosure action.

The trial court ruled that the respondents were not entitled to recover <u>any</u> of their fees and costs. The court first decided that the respondents had not established a basis for recovery of fees and costs. The court rejected their assertion that section 14.3 of the loan agreement allowed them to recover their fees and costs. The court concluded that this provision did not apply because "[t]his was not a collection action commenced by the respondents," but rather was a petition for "an injunction and other relief and commenced by the borrower." The trial court did not separately address the $25,945 that the respondents incurred in bringing their foreclosure action. Alternatively, the trial court concluded that, even if section 14.3 of the loan agreement applied, the respondents had "failed to demonstrate that the amount sought is reasonable and does not encompass amounts claimed elsewhere in the table of amounts claimed."

The respondents first assert that the trial court erred when it impliedly ruled that section 14.3 of the loan agreement did not allow them to recover the fees and costs incurred in the foreclosure action. "An award of attorney's fees must be grounded upon statutory authorization, a court rule, an agreement between the parties, or an established exception to the rule that each party is responsible for paying his or her own counsel fees." <u>In the Matter of Hampers & Hampers</u>, 154 N.H. 275, 289 (2006) (quotation omitted). We review the trial court's interpretation of section 14.3 of the loan agreement <u>de</u> <u>novo</u>, giving the language used by the parties its reasonable meaning. <u>See</u> <u>In the Matter of Liquidation of Home Ins. Co.</u>, 157 N.H. 543, 546 (2008). We review the trial court's actual award of attorney's fees under our unsustainable exercise of discretion standard. <u>Id</u>. at 290.

Section 14.3 of the loan agreement provides: "Borrower shall pay all costs, expenses, charges, including attorney's fees, incidental to or relating to the Loan and to the collection thereof and to the foreclosure of the Loan Documents . . . ." The fees and costs that the respondents incurred in bringing their foreclosure action are expressly encompassed in this provision. Accordingly, the trial court unsustainably exercised its discretion by ruling that those fees and costs were not recoverable pursuant to section 14.3 of the loan agreement.

The respondents next argue that the trial court erred when it determined that section 14.3 does not allow them to recover their attorney's fees and costs

10

incurred in the instant proceeding initiated by the petitioner. The trial court interpreted this provision to allow the respondents to recover their attorney's fees and costs <u>only</u> in a collection proceeding and/or foreclosure action that they initiated. However, the plain meaning of the provision allows the respondents to recover their attorney's fees and costs in any action that is "<u>incidental to or relating to</u> the Loan and to the collection thereof and to the foreclosure of the Loan Documents." (Emphasis added.)

The instant proceeding, although initiated by the petitioner, relates to the loan and its collection and to the respondents' foreclosure action. The petitioner's petition sought: (1) a declaration regarding whether he owed the amounts the respondents claimed he owed on the loan; (2) a declaration regarding whether the respondents had the right to foreclose on the property; (3) a declaration regarding whether the loan agreement was valid; (4) disgorgement of "all applicable interest[ ], costs, and attorneys' fees" the respondents "unjustly obtained and unconscionably retained" pursuant to the loan agreement and promissory note; and (5) damages for the respondents' allegedly unlawful conduct in brokering the loan. Because the petition relates to the loan and its collection and to the respondents' foreclosure action, section 14.3 of the loan agreement entitles the respondents to recover the reasonable attorney's fees and costs they have incurred in this proceeding. We hold, therefore, that the trial court's determination that section 14.3 does not apply to the fees and costs the respondents incurred in this proceeding constitutes an unsustainable exercise of discretion.

The respondents next contend that the trial court erred when it concluded that they had failed to demonstrate that the fees and costs they incurred were reasonable. The trial court found "several penalties on late interest payments" were included in the $77,836 the respondents claimed for fees and costs incurred in the instant proceeding. Our review of the record on appeal does not support this finding. Accordingly, we cannot uphold it.

In light of the trial court's errors with regard to the attorney's fees and costs claimed by the respondents, we vacate its order denying them, and remand for it to reconsider the respondents' request for fees and costs. On remand, the court may hold such further proceedings upon the respondents' request as it may deem necessary, consistent with this opinion.

III. Petitioner's Cross-Appeal

The petitioner cross-appeals the trial court's determination that the respondents' conduct did not violate the CPA. The petitioner argues that the respondents violated the CPA because, despite competing claims of ownership, they demanded that he make payments under the promissory note and initiated a collection and foreclosure action. The petitioner further asserts that the respondents acted unfairly because they rejected his offer to settle the

11

matter and insisted that he pay what he owed under the loan agreement and promissory note. The trial court rejected these arguments.

We will uphold the trial court's findings of fact and rulings of law unless they lack evidentiary support or constitute a clear error of law. Axenics, 164 N.H. at 675. Under RSA 358–A:2, "[i]t shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." We have previously recognized that, although this provision is broadly worded, not all conduct in the course of trade or commerce falls within its scope. Id. "An ordinary breach of contract claim, for example, is not a violation of the CPA." Id. (quotation omitted). In determining which commercial actions not specifically delineated are covered by the CPA, we have employed the "rascality" test. Id. Under the rascality test, "the objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." Id. at 675-76 (quotation omitted).

Here, we agree that the respondents did not violate the CPA by: (1) requiring the petitioner to honor his obligations under the loan agreement and promissory note; (2) enforcing their rights under those documents by initiating a collection and foreclosure action upon his default; and (3) rejecting his offer of compromise. These actions do not, as a matter of law, "raise an eyebrow of someone inured to the rough and tumble of the world of commerce." Id. (quotation omitted). Accordingly, we find no error in the trial court's rejection of the petitioner's CPA claim.

IV. Conclusion

For all of the reasons we have discussed, we affirm the trial court's: (1) exclusion of evidence of the petitioner's experience with similar loans; (2) determination that the respondents cannot collect a $22,500 delinquency charge on the petitioner's lump sum payment of principal; and (3) conclusion that the respondents' actions did not violate the CPA. We reverse the trial court's conclusion that the petitioner was entitled to a remedy under an unjust enrichment theory. Additionally, we vacate the trial court's determination that the petitioner's payment of $450,000 should be applied to principal and its decision not to award the respondents any of their claimed attorney's fees and costs. We remand for further proceedings consistent with this opinion.

Affirmed in part; reversed in part; vacated in part; and remanded.

HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.

12