Cheshire,
No. 4253.

GENE GOWING *v.* PAUL LEHMANN.

Submitted November 5, 1953.
Decided December 31, 1953.

*Howard B. Lane* for the plaintiff.

*Homer S. Bradley* for the defendant.

GOODNOW, J.   In 1943, the adjoining premises now owned by the plaintiff and defendant were both owned by Isabel F. Clukey. On that part of her property now owned by the defendant there was located an artesian well with an electric pump attached thereto through which water was pumped into a pipe line supplying the building on the property now owned by the plaintiff as well as into lines supplying two buildings on the property now owned by the defendant.   On July 16, 1943, Mrs. Clukey conveyed to her mother, Mary A. Hafeli, the land and building now owned by the plaintiff together with "the right and easement to take water from the well on other land of the grantor as now used and taken to the building on the premises hereby conveyed with the right to enter upon the said other premises of the grantor for the purpose of repairing and replacing said pipes when necessary . . . . The granting of this easement to include the use of the pipe line on my premises as now used provided, however, that should it be necessary at any time to repair or replace said pipe line used by the grantee, her successors and assigns, [she] shall bear her share of the expense of such replacement."   Two months later, Mrs. Clukey conveyed to the defendant the land and buildings now owned by him subject to such water rights and easements as had previously been conveyed to Mary A. Hafeli.   The plaintiff acquired the Hafeli title and rights in 1950.   Thereafter until June, 1952, the defendant continued to operate the pump which supplied water not only to his own buildings but also to the building of the plaintiff.   The same well, pump and pipes are presently in place on the defendant's property as were there in 1950 when the plaintiff purchased his property.   In 1952, the defendant developed a new water system through which water could be brought into the lines supplying his buildings by means of another pump from a nearby lake rather than from the well.   The connection of this system by-passed the line supplying the plaintiff's property.   At the same time, the well system including the pump was left intact

in a stand-by capacity for use during the period of frost in the winter months when the lake system was not usable. "If we don't want to use the well, we throw the switch out, and if we do, we throw it in." On June 20, 1952, after notifying the plaintiff of his intention to discontinue the operation of the well pump during frost-free months, the defendant threw the switch out and thereby stopped the flow of water to the plaintiff's property. No agreement was ever made between the parties concerning the operation, repair or maintenance of the pump connected with the well, the annual average cost of which for the three years prior to 1952 exceeded two hundred dollars. The Court found that the plaintiff could at all times obtain water from the well by installing a pump of his own without any material alteration to the water pipes supplying his property and that defendant had done nothing to deprive the plaintiff of taking water from the system as it existed in 1943, other than to cease operating his pump connected with it.

The defendant's requests raised the issue of whether he was obliged as a matter of law to operate and maintain the pump for the purpose of supplying water from the well to the plaintiff's building. The defendant excepted to the denial of his request that he had no duty to operate an electric pump for the benefit of the plaintiff and to the Court's order that he permit the plaintiff to take water "in the same manner and under the same conditions as existed prior" to that date. Consideration of these exceptions requires an examination of the terms and extent of the plaintiff's easement.

The rights and duties of the parties do not arise from usage but were created by and defined in the deed of 1943, to the plaintiff's predecessor in title which conveyed the right and easement to take water from the well in question "as now used and taken" and the right to enter upon the land on which the well is located to repair and replace pipes. The deed also specifically granted the use of the pipe line on the grantor's premises "as now used" and provided that if repair or replacement of "said pipe line" became necessary, the grantee, or her successors in title, should bear her share of the expense of replacement. Although the express language of the deed contains specific provisions as to pipes, it makes no mention of the pump. It is well settled under such circumstances that the defendant, as successor in title to the grantor of the easement, is not bound to operate or maintain the pump unless by implication from the language of the grant, there is a covenant that he should do so. *Moffett* v. *Company*, 81 N. H. 79, 80, and cases cited.

The grant to the plaintiff's predecessor in title was principally of a right to take water from a certain well. Whether the words "as now used and taken" which appear in the deed in connection with this grant and the words "as now used" which are concerned with the additional grant of the use of the pipe line on the grantor's premises were intended to also constitute an undertaking by the grantor that an unmentioned pump would continue to be operated and maintained in the well system must be determined by this court as a matter of law from the language itself, viewed in the light of the surrounding circumstances. *North Hampton District* v. *Society,* 97 N. H. 219, 220. It is undisputed that a pump belonging to the grantor was in use at the well when this easement was granted by her to her mother; that it was by this means that a supply of water was then furnished to both properties and that the water in this well can be made available only through the use of a pump. If, in the light of these facts, the language of the deed can be said to impose any duty as to the pump, the period during which that duty is owed must be one without limit, there being no basis on which it could be confined merely to the time during which "the defendant operates and maintains a pump in this well for his own benefit," as claimed by the plaintiff. The words themselves, taken in their context, could plainly have been intended to define the location of the pipe and the quantity of water which can be drawn from the well by the plaintiff. See *Fowler* v. *Kent,* 71 N. H. 388, 394. That they also imposed by implication upon the grantor so burdensome an obligation that she and her successors in title would be forever obliged to operate and maintain a pump at this well is so unreasonable an interpretation of the parties' intention as to be untenable. *Sakansky* v. *Wein,* 86 N. H. 337, 340. We conclude that no such duty was intended by the parties to the original grant.

The plaintiff's easement to take water from the well does not include the right to require the defendant to operate and maintain a pump to supply that water, regardless of whether he operates and maintains a pump at the well for his own use and benefit. There being no duty on the defendant in that respect, there is nothing that equity can enforce. *Maddock* v. *Chase,* 94 N. H. 241, 245. The decision in *Olcott* v. *Thompson,* 59 N. H. 154, 156, relied on by the plaintiff, to the effect that the rights of both parties to an easement are to be so exercised "that there may be a due and reasonable enjoyment of both" is not applicable in

this case since the plaintiff has no right under his easement to require any operation or maintenance of the pump at the well by the defendant.

The rulings and decree must be modified to provide that the defendant has no legal duty to operate or maintain a pump for the sole benefit of the plaintiff, that his discontinuance of operation of the pump on June 20, 1952, was in no way an interference with the plaintiff's rights under his easement.

*Exceptions sustained.*

All concurred.