Merrimack
No. 2010-372

AARON M. BOISSY & a.

v.

RUTH CHEVION

Argued: June 9, 2011
Opinion Issued: September 20, 2011

*Coughlin, Rainboth, Murphy & Lown, P.A.*, of Portsmouth (*Kenneth D. Murphy* on the brief and orally), for the petitioners.

Ruth Chevion, by brief and orally, *pro se*.

DALIANIS, C.J. The respondent, Ruth Chevion, appeals, and the petitioners, Aaron M. and Katie E. Boissy, cross-appeal, an order of the Superior Court (*Smukler*, J.) granting in part and denying in part the petitioners' petition to quiet title. The trial court ruled that the respondent lacked an easement to use a certain well on the petitioners' property, but that she had a deeded right-of-way over the property to access a former ice pond. We affirm.

The trial court found the following facts. The parties own neighboring parcels of land in Hopkinton. The petitioners own three lots, one of which adjoins the respondent's lot. The petitioners brought this action to quiet title to two easements the respondent claimed to have on their property. The first easement allegedly gave the respondent the right to pipe water to her house from a well on one of the petitioners' three lots. The second easement allegedly gave the respondent a right-of-way over the petitioners' property to access an "ice pond."

The trial court rejected the petitioners' assertion that the respondent's well easement was extinguished by abandonment. The trial court ruled that the easement was extinguished, nonetheless, because its purpose — to allow use of a certain well on the petitioners' property — was impossible to accomplish. *See* RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 7.10(1), at 394 (2000); *see also* J. W. BRUCE & J. W. ELY, JR., THE LAW OF EASEMENTS AND LICENSES IN LAND § 10.8, at 10-16 to 10-17 (2011). The trial court found that the old well had not been used at least since the respondent purchased her property in 1982. The trial court further found that the well could not now be located and, therefore, the respondent could not use the easement "unless she creates a new well and runs piping." By contrast, the trial court ruled that the respondent's alleged easement to access the "ice pond" was intact, even though no "ice pond" currently exists. This appeal and cross-appeal followed.

In an action to quiet title, the burden is on each party to prove good title as against all other parties whose rights may be affected by the court's decree. *Hersh v. Plonski*, 156 N.H. 511, 514 (2007). We will uphold the trial court's determination unless it is erroneous as a matter of law or unsupported by the evidence. *Id.*

*I. Well Easement*

We first address the respondent's appeal of the trial court's ruling that her alleged well easement was extinguished because its purpose could no

longer be accomplished. The respondent first argues that the purpose of the easement was to supply her property with water, not, as the trial court concluded, to allow use of a well. "The focus of the easement," she contends, "is the water, not the well." She contends that because the trial court's ruling rests upon a mistaken premise, its conclusion that the easement's purpose could no longer be accomplished was error.

Resolving this issue requires that we interpret the relevant deeds. The interpretation of deeds is a question of law, ultimately to be resolved by this court. *See Flanagan v. Prudhomme*, 138 N.H. 561, 565 (1994). Thus, we review the trial court's deed interpretation *de novo*. *Mansur v. Muskopf*, 159 N.H. 216, 221 (2009). Our interpretation is based upon the parties' intentions gleaned from construing the language of the deed from, as nearly as possible, the position of the parties at the time of the conveyance and in light of surrounding circumstances. *Flanagan*, 138 N.H. at 565-66. We base our judgment on this question of law upon the trial court's findings of fact. *Arcidi v. Town of Rye*, 150 N.H. 694, 701 (2004). If the language of the deed is clear and unambiguous, we will interpret the intended meaning from the deed itself without resort to extrinsic evidence. *See Flanagan*, 138 N.H. at 566.

The original grant of the well easement to the respondent's predecessors-in-title provided:

> There is also granted herewith the right to a well on adjoining land of the grantors from which water is now being piped into the residence by gravity flow, together with the right to cross the woodland and field between the house and the well for the purpose of maintaining the water flow between the well and the house.

In later deeds, including the respondent's, the description of the easement changed only slightly. The respondent's deed describes the easement as follows:

> There is also granted the right to a well on adjoining land now or formerly of Frank and Claudine G. Doyle from which water is now being piped into the premises by gravity flow, together with the right to cross the woodland and field between the premises and the well, for the purpose of maintaining water flow between the well and the premises.

According to the plain and unambiguous language of the relevant deeds, the easement's purpose is to grant the respondent and her predecessors-in-title "the right to a well" on the petitioners' land. The easement also grants a right-of-way "for the purpose of maintaining water flow

*between the well* and the premises." (Emphasis added.) The stated purpose of the easement, therefore, was to grant the respondent and her predecessors a right to use a particular well on the petitioners' property. *See Surprise v. Ferris*, No. CV020068751, 2004 WL 2165171, at *12, *13 (Conn. Super. Ct. Aug. 27, 2004). Contrary to the respondent's assertions, the right granted was not a general right to a water supply but a specific right "to take water from a certain well." *Gowing v. Lehmann*, 98 N.H. 414, 417 (1953); *see DeForge v. Balint*, 128 N.H. 452, 453 (1986).

Our decisions in *Gowing* and *DeForge* are instructive. The parties in *Gowing*, like the parties in this case, owned adjoining properties. *Gowing*, 98 N.H. at 415. On the defendant's property had been an artesian well with an attached electric pump through which water was pumped into a pipe line that supplied water to buildings on the defendant's property as well as to a building on the property later owned by the plaintiff. *Id.* Deeds in the plaintiff's chain of title conveyed, in addition to the land and buildings, "the right and easement to take water from the well" on the defendant's property as well as the right to enter the defendant's land "for the purpose of repairing and replacing said pipes when necessary." *Id.* (quotations omitted). The easement included "the use of the pipe line." *Id.* (quotation omitted). The defendant acquired his property in 1943 and, until 1952, operated the pump attached to the well. *Id.* In 1952, the defendant developed a new water system that supplied water from a nearby lake instead of the well and bypassed the line supplying the plaintiff's property. *Id.* The defendant left the prior well system and pump intact for winter use when the lake system was not usable. *Id.* at 415-16. In June 1952, the defendant discontinued operating the well pump, thereby stopping the flow of water to the plaintiff's property. *Id.* at 416.

The issue on appeal was whether the defendant was required to operate and maintain the pump on his property for the purpose of supplying water to the plaintiff's property. *Id.* We held that the plaintiff's easement, which was to take water from a specific well, did not include the right to require the defendant to operate and maintain a pump to supply water to the plaintiff's property. *Id.* at 417.

We reaffirmed *Gowing* in *DeForge*. In that case, the easement granted the plaintiff's predecessors-in-title the "right to draw water from the well" located on the defendants' land and to "enter upon" the defendants' land "to relay or repair" the pipe used to supply water to the plaintiff's land. *DeForge*, 128 N.H. at 453 (quotations omitted). The issue on appeal was whether the defendants were "required to *supply* the plaintiff with water from the well on their land or merely to allow the plaintiff to *draw* water from the well." *Id.* We ruled that the language of the easement "clearly [gave] the plaintiff the right to draw water from the defendants' well and

the right to enter the land to repair the pipe which furnishes the water." *Id.* Accordingly, the defendants, we held, "had no obligation to furnish water to the plaintiff or to furnish her a pump and power under the terms of the easement." *Id.*

Here, like the dominant estate owners in *Gowing* and *DeForge*, the respondent and her predecessors-in-title were given the right to draw water from a specific well. The petitioners, like the servient estate owners in *Gowing* and *DeForge*, had no obligation to provide a water supply to the respondent, but merely to allow access to a particular well. Indeed, the respondent concedes that the relevant deeds gave her, as the dominant estate owner, "the sole control over the repair of the well."

In arguing that her easement was for a water supply, and not for the right to draw water from a specific well, the respondent mistakenly relies upon our decision in *Gagnon v. Carrier*, 96 N.H. 409 (1951). In that case, the *trial court* decided that the purpose of the easement at issue was for a water supply. *Gagnon*, 96 N.H. at 410 (preface to opinion summarizing trial court decision). This ruling was not challenged on appeal, and, thus, we never considered whether the trial court's conclusion was correct. *See id.* at 410, 411. The sole issue for our review was whether the easement had been abandoned. *See id.* at 411. Accordingly, *Gagnon* does not support the respondent's assertion that her easement was for a water supply and not for the right to draw water from a well.

In light of our conclusion that the respondent's easement is for the right to draw water from a particular well, we reject her assertion that her easement entitled her to install a new well on the petitioners' land. Indeed, digging an entirely new well could be evidence of intent to abandon the original well easement. *See Surprise*, 2004 WL 2165171, at *4 (well easement extinguished by abandonment when plaintiffs dug entirely new well).

The respondent next contends that impossibility of purpose is not a ground for extinguishing an easement under New Hampshire law. To the extent that the respondent implies that we have previously considered and rejected the impossibility of purpose doctrine, she is mistaken. This case is our first opportunity to consider the doctrine, which we adopt today.

▮ As courts in other jurisdictions have recognized and as reflected in the RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES), *supra* § 7.10(1), at 394, "the common law rule [is] that an easement for a particular purpose terminates when it becomes impossible to use the easement for the purpose intended." *AKG Real Estate, LLC v. Kosterman*, 717 N.W.2d 835, 842 (Wis. 2006); *see American Oil Company v. Leaman*, 101 S.E.2d 540, 552 (Va. 1958) (citing cases and treatises). "This cessation of purpose doctrine is

designed to eliminate meaningless burdens on land and is based on the notion that parties that create an easement for a specific purpose intend the servitude to expire upon cessation of that purpose." BRUCE & ELY, *supra* § 10:8, at 10-17.

■■ Under the impossibility of purpose doctrine as set forth in the RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES), *supra* § 7.10(1), at 394:

> When a change has taken place since the creation of a servitude that makes it impossible as a practical matter to accomplish the purpose for which the servitude was created, a court may modify the servitude to permit the purpose to be accomplished. If modification is not practicable, or would not be effective, a court may terminate the servitude. Compensation for resulting harm to the beneficiaries may be awarded as a condition of modifying or terminating the servitude.

"Inquiry in the cessation of purpose cases begins with determining the particular purpose of the easement in question." BRUCE & ELY, *supra* § 10:8, at 10-17. "Next, one must decide whether the contemplated purpose still exists. If not, the easement is considered to have expired." *Id.* at 10-18. "Courts have applied the cessation of purpose doctrine in various circumstances. *Id.*; *see Leaman*, 101 S.E.2d at 551-52 (easement created solely to provide access to specific public road was extinguished when designated road was legally abandoned); *Makepeace Bros. v. Town of Barnstable*, 198 N.E. 922, 925-27 (Mass. 1935) (easement in areas used for whaling purposes extinguished because whaling industry disappeared from area).

■ The respondent asserts that the trial court misapplied the impossibility of purpose doctrine in this case. We disagree. The purpose of the easement at issue was to allow the respondent and her predecessors to draw water from a particular well. The trial court aptly ruled that this purpose was impossible to accomplish because the well to which the easement refers has not been used in at least twenty-eight years and cannot now be located. Under these circumstances, we hold that the trial court correctly ruled that the easement was extinguished. *Cf. Cricenti v. Bewley*, 120 N.H. 352, 353-54 (1980) (right to use water from spring was lost by abandonment when cistern was unused for twenty-two years until house burned down and plaintiffs took no steps to preserve flow of water from spring, allowing spring house to fall into disrepair and house to be razed without preserving pipe leading to cistern).

■ The respondent likens this case to *First National Bank of Boston v. Konner*, 367 N.E.2d 1174 (Mass. 1977). Her reliance upon Konner is

misplaced as it concerned a profit á prendre, not an easement. *See Konner*, 367 N.E.2d at 1176; 28A C.J.S. *Easements* § 14, at 200, 201 (2008) ("The right to profits, denominated profits á prendre, consists of a right to take a part of the soil or product of the land of another . . . . [It] is . . . distinguishable from an easement."). The defendant in *Konner* had a perpetual right to take sand from an adjoining piece of property to sand a cranberry bog and to construct a dike. *Konner*, 367 N.E.2d at 1176. Although the land at issue had at one time been converted to a cranberry bog, it had not been used as such for more than thirty years. *Id.* The court rejected the plaintiffs' contention that the profit á prendre was extinguished because the limited purpose for which it was created ceased to exist. *Id.* at 1178-79. The court ruled that although it would be difficult, it would not be factually or legally impossible to reclaim the bog. *Id.* at 1178-79. Thus, the purpose for which the profit á prendre existed, to sand a cranberry bog, was not impossible to accomplish. *Id.* at 1179. In this case, by contrast, the purpose for which the easement was created — to allow access to a certain well — is impossible to accomplish because the well, having not been used in years, cannot now be located.

■ The respondent next argues that the evidence does not support the trial court's finding that the well cannot be located. She concedes that the petitioners testified that they could not locate the well, despite having looked for it. The record also reflects that a member of the family that lived on the servient estate from approximately 1960 until approximately 2000 testified that he never saw a well on the property and never heard that such a well existed. The respondent argues, however, that her testimony that it was possible to find the well, although she had not yet done so, should have compelled the trial court to find that the well could, in fact, be located. Specifically, the respondent testified:

Q. Okay, you have not been able to find [the well], correct?
A. I think I found it.
Q. Well, the last time you were here and in your deposition you said you hadn't been able to find it.
A. I think I know where it is.
Q. Okay, is that a recent discovery?
A. Yes.
Q. And when did you go out there?
A. Oh, I go out there all the time trying to find it, but I did have somebody go out there with me who is an expert in wells went out there with me and we had a general area we think the well is.
Q. And did you do that between the time we finished in October and today?

A. Yes.

Q. Okay. Although, previously you had had an expert go out and you couldn't find it, right?

A. Right.

We defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence. *Syncom Indus. v. Wood*, 155 N.H. 73, 86 (2007). On the record before us, we cannot say the trial court erred by finding that the well cannot now be located.

The respondent argues that "[e]ven if the location of the old well is currently unknown, the court below should have taken . . . into account" the possibility that technology may make it possible to find the well in the future. "Current technology has found water under the surface of Mars," she asserts, therefore, "[i]t will certainly find water and may also find the old well . . . under a small field in Hopkinton." "For the future," she hypothesizes, "new technology, such as nanorobots, may be commonplace in 20 or 50 or 100 years, and these kinds of sensors could penetrate under the ground and report their findings." We conclude that the trial court did not err by relying upon the evidence presented rather than upon speculation.

[10] The respondent next asserts that the trial court's ruling reflects that it applied the wrong burden of proof. She argues that because she proved that she had a well easement, the trial court erred by considering whether the petitioners met their burden of proving that it was extinguished by the impossibility of purpose doctrine. We find no error in the trial court's allocation of the burden of proof in this case. *See* 25 AM. JUR. 2D *Easements and Licenses* § 116, at 610 (2004) (party claiming easement has burden of proof; party asserting abandonment of easement has burden of proof). The issue was not, as the respondent asserts, whether she or the petitioners had "superior title" to the easement, but whether her express easement was extinguished by the impossibility of purpose doctrine.

The respondent next contends that the trial court unsustainably exercised its discretion by precluding her expert witness from testifying. The record reflects that the trial court precluded the witness's testimony because the respondent's expert witness disclosure was "untimely and incomplete." The respondent does not challenge these factual findings. She merely argues, in effect, that the trial court's decision was unfair.

We have long recognized that justice is best served by a system that reduces surprise at trial by giving both parties the maximum amount of information. *Figlioli v. R.J. Moreau Cos.*, 151 N.H. 618, 626 (2005). A party

is thus entitled to disclosure of an opposing party's experts, the substance of the facts and opinions about which they are expected to testify, and the basis of those opinions. *Id.* A party's failure to supply this information should result in the exclusion of expert opinion testimony unless good cause is shown to excuse the failure to disclose. *Id.* We review a trial court's decision on the management of discovery and the admissibility of evidence under an unsustainable exercise of discretion standard. *Id.*

The respondent has failed to demonstrate, or even to argue, that good cause exists for her failure to provide a complete and timely disclosure. We, therefore, uphold the trial court's decision to preclude her expert witness from testifying. *See id.*

Finally, the respondent asserts, again on the grounds of fairness, that the trial court erred by denying her post-trial motion to reopen the record to allow her expert to testify. Because the respondent has failed to provide us with a copy of her motion and the trial court's response thereto, we lack a record sufficient to decide this issue on its merits. *See Bean v. Red Oak Prop. Mgmt.,* 151 N.H. 248, 250 (2004). The respondent's remaining arguments about the well easement lack merit and warrant no extended consideration. *Vogel v. Vogel,* 137 N.H. 321, 322 (1993). Although the respondent raised an additional issue in her notice of appeal regarding reimbursement of costs, it is deemed waived because she failed to brief it. *In re Estate of King,* 149 N.H. 226, 230 (2003).

## II. Ice Pond Easement

We next address the petitioners' cross-appeal of the trial court's ruling that the respondent has a deeded right-of-way over their property to access a former ice pond. The parties agree that the ice pond easement is for a "right of way as it now exists [at the time of a 1936 deed]" over one of the three lots now owned by the petitioners "to the ice pond located" thereon. The trial court found "that there is a marsh-like body of water" on one of the petitioners' three lots. Although this body of water cannot now be used as an ice pond, the court was persuaded that it is the ice pond to which deeds in the parties' chains of title referred. The court ruled that the fact that the "marsh-like body of water" could not now be used as an ice pond did not extinguish the easement absent evidence that the easement's sole purpose was related to the capacity of the body of water to serve as an ice pond. In response to the petitioners' post-trial motion for clarification, the court stated that the deeded right-of-way was located "from the opening in the stone wall" on the petitioners' property "and along the path."

■ The petitioners challenge the trial court's finding that the marsh-like pond that now exists on the property is the "ice pond" to which the deeds refer as well as its findings regarding the location and existence of the right-of-way. As there is evidence in the record to support each of these findings, we uphold them. While the evidence before the trial court was conflicting, it was for the trial court to resolve such conflicts. *See Syncom Indus.*, 155 N.H. at 86.

The petitioners also argue that the trial court erred as a matter of law when it ruled that even though the "ice pond" no longer exists, the respondent's right-of-way has not been extinguished. At oral argument, however, they conceded that the trial court's ruling on this issue was correct. Specifically, they conceded that the reference to the ice pond was a description of the location of the right-of-way and was not a statement regarding the easement's purpose. As petitioners' counsel stated: "The judge said, . . . I don't care if there's an ice pond there. It was a right-of-way and if she wants to go stand in a swamp, she can stand in a swamp. And, that's probably correct." We, therefore, deem this argument waived and uphold the trial court's conclusion that the easement was not extinguished merely because the body of water now on the petitioners' property can no longer serve as an ice pond.

*Affirmed.*

HICKS and LYNN, JJ., concurred.