**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2015-0109, <u>Philip Seekell v. John S. Merrow & a.</u>, the court on October 23, 2015, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The plaintiff, Philip Seekell, appeals the order of the Superior Court (<u>Bornstein</u>, J.), following a bench trial, determining the rights of the defendants, heirs of Howard Merrow and Elsie Merrow (Merrows), to certain springs on the plaintiff's property. The plaintiff argues that the trial court erred by: (1) ruling that the Merrows reserved for themselves exclusive rights to two springs on his property; (2) finding that those two springs are the springs identified in the deeded easement; (3) precluding his surveyor from testifying; (4) concluding that the defendants had not abandoned their rights to one of the springs; and (5) not finding that the defendants exceeded the scope of their easement.

The plaintiff owns a 15.8-acre parcel of land in Jefferson. The defendants own an abutting lot improved with a dwelling. In 1955, the Merrows acquired a farm consisting of approximately 114 acres, which included both lots. Since 1955, three springs on the plaintiff's lot have served as the only water source for the dwelling on the defendants' lot. In 1965, the Merrows conveyed a parcel that included the plaintiff's lot, reserving for themselves "the rights to the two springs which are presently connected with our homestead," together with the right to enter the conveyed premises to maintain the pipes leading from the springs to the Merrows' homestead.

The plaintiff first argues that the trial court erred in ruling that the Merrows reserved for themselves exclusive rights to the two springs. The interpretation of a deeded easement is a question of law for this court to decide. <u>Gill v. Gerrato</u>, 154 N.H. 36, 39 (2006). "In interpreting a deed, we give it the meaning intended by the parties at the time they wrote it, taking into account the surrounding circumstances at that time." <u>Thurston Enterprises, Inc. v. Baldi</u>, 128 N.H. 760, 765 (1986). "We base our judgment on this question of law upon the trial court's findings of fact." <u>Boissy v. Chevion</u>, 162 N.H. 388, 391 (2011).

We conclude that the Merrows reserved for themselves exclusive rights to the two springs. First, we note that the Merrows reserved the <u>rights</u> (plural) to

the two springs, without any limitation or language stating that their rights would be shared by others.  In addition, the two springs provided the only source of water for the Merrows' home.  As the trial court found, at the time of the conveyance, the spring known as "spring one" already had dried up.  "Spring two" dried up two years later, leaving "spring three" as the Merrows' only water source.  In light of these circumstances, we conclude that the Merrows intended to retain exclusive rights to the two springs – spring two and spring three.  See Gill, 154 N.H. at 39.  As the trial court ruled, the plaintiff may install a well on his own property, provided that in doing so, he does not interfere with the defendants' rights to the two springs.

The plaintiff next argues that the trial court erred in finding that the two springs referenced in the deed were the springs referred to by the parties as springs two and three.  "We accord deference to a trial court's findings of historical fact, where those findings are supported by evidence in the record."  Blagbrough Family Realty Trust v. A & T Forest Prods., 155 N.H. 29, 33 (2007).  The plaintiff asserts that at the time of the conveyance, spring one was still in service, and spring three was not yet connected with the Merrows' lot.  In support of his position, the plaintiff relies upon a 1991 plan showing a springhouse at spring one.  The plaintiff asserts that this is compelling evidence that spring one was in service in 1965, and that it remained in service through 1991.  He also notes that one of the Merrows' sons, John Merrow, admitted that the concrete well at spring three was not installed until 1967, two years after the conveyance.  However, John Merrow also testified that at the time of the conveyance, spring one had dried up, and springs two and three were connected to the Merrows' homestead.  He further testified that the well at spring three was improved in 1967, and that it previously existed as a stone-lined well.  The trial court found John Merrow's testimony on this issue to be "both credible and persuasive."  We defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence.  Boissy, 162 N.H. at 396.  Based upon this record, we cannot conclude that the trial court erred in finding that the two springs referenced in the deed were springs two and three.  See id.

The plaintiff next argues that the trial court erred in precluding his surveyor from testifying, and precluding him from introducing any documents containing the surveyor's opinions.  The defendants moved in limine to preclude the surveyor's testimony, and the introduction of documents containing his opinions, based upon the plaintiff's failure to timely disclose the surveyor as an expert.  A party is entitled to the disclosure of an opposing party's experts, the substance of the facts and opinions about which they are expected to testify, and the basis of those opinions.  Boissy, 162 N.H. at 396-97.  A party's failure to supply this information should result in the exclusion of expert opinion testimony unless good cause is shown to excuse the failure to disclose.  Id. at 397.  We review a trial court's decision on the management of

2

discovery and the admissibility of evidence under an unsustainable exercise of discretion standard.  Id.

After a March 5, 2014 hearing on the defendants' motion in limine, the trial court ruled that the surveyor's plan, which the plaintiff provided to the defendants prior to the disclosure deadline, was not an adequate expert disclosure, and that the defendants were prejudiced by the plaintiff's failure to provide a proper expert disclosure.  The plaintiff did not provide a transcript of the March 5, 2014 hearing.  See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250-51 (2004) (It is the burden of the appealing party to provide this court with a record sufficient to decide his issues on appeal.).  Based upon the limited record available for our review, we cannot conclude that the trial court unsustainably exercised its discretion in precluding the surveyor from testifying, and in precluding the plaintiff from introducing documents containing the surveyor's opinions, based upon the plaintiff's failure to timely provide an adequate expert disclosure.  See Boissy, 162 N.H. at 397.

The plaintiff next argues that the trial court erred in not finding that the defendants had abandoned their rights to spring two.  "Abandonment of an easement must involve clear, unequivocal and decisive acts by the owner of the dominant estate manifesting either a present intent to relinquish the easement or a purpose inconsistent with its further existence."  Titcomb v. Anthony, 126 N.H. 434, 437 (1985) (quotations and citation omitted).  We will not disturb the trial court's findings regarding abandonment if they are supported by the evidence, even if the evidence is conflicting.  Downing House Realty v. Hampe, 127 N.H. 92, 94 (1985).

The plaintiff asserts that the defendants abandoned their rights to spring two in 1967 by removing the stone-lined well and springhouse, disconnecting spring two from the main water line, and failing to use spring two as a water source since that time.  "It is well established that mere non-use of an easement does not result in its loss or destruction, even if continued for a long period of time."  Id. at 95.  The trial court found that although Howard Merrow removed the well at spring two in 1967, and that spring two has not been used since then, Merrow marked its location with a section of copper pipe to which he attached a piece of plastic water line with a hose clamp.  A photograph introduced as an exhibit at trial shows that the marker still exists at that location.  The trial court also found that the defendants and their predecessors "have always kept the strip of land above the water line clear of trees and brush in order to keep tree roots from intruding into and damaging the water line and keep the water line accessible in the event it needed to be repaired or replaced."  John Merrow testified that his father never intended to abandon spring two because it could provide an alternate source of water if spring three ever dried up.  Because the trial court's finding that the defendants have not abandoned spring two is supported by the evidence, we uphold it.  See id.

3

Finally, the plaintiff argues that the trial court erred in failing to find that the defendants have exceeded the scope of the easement by: (1) replacing the stone-lined well at spring three with a concrete well in 1967; (2) moving the location of the water line; (3) failing to repair the well to eliminate water overflow; and (4) denying the plaintiff the right to excavate to control surface water flow. The defendants' easement rights include, by implication, whatever rights are reasonably necessary to enable them to use the easement. Arcidi v. Town of Rye, 150 N.H. 694, 701 (2004). This includes the right to make reasonably necessary improvements. Id. Reasonableness is a question of fact determined in light of the surrounding circumstances. Id. at 702. We will not overturn the factual findings of the trial court when they are supported by the evidence. Id.

The trial court found that in 1967, Howard and John Merrow constructed a new, concrete well at spring three because the stone-lined well had collapsed. John Merrow testified that, at the same time, he and his father replaced the old, steel water line to the house with a new, plastic water line in the same location. He also testified that the area around the well always was marshy and wet, and that it looks no different today from the way it looked fifty-five or sixty years ago, when he first visited the site. The trial court concluded that the evidence failed to show that the defendants' well was causing excessive surface water flow. The court noted that the plaintiff's hydrogeologist was unable to determine whether the surface water in the area was caused by the well or natural conditions. The court also found that the plaintiff presented no evidence to support his claim that the defendants denied his request to perform reasonable excavation to control excess water flow. Considering all the evidence, the court concluded that the defendants have not exceeded the scope of the rights they reserved in the 1965 deed. Because the court's findings are supported by the evidence, we uphold them. See id.

Affirmed.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,
Clerk**

4