GARY H. ALLIGOOD ET AL. *v.* ANTHONY
LASARACINA ET AL.
(AC 30406)

Gruendel, Robinson and Alvord, Js.

Argued December 9, 2009—officially released July 13, 2010

*James Colin Mulholland*, for the appellants (plaintiffs).

*Mark E. Block*, with whom, on the brief, was *Gary W. Huebner*, for the appellees (defendants).

*Opinion*

ROBINSON, J. The plaintiffs, Gary H. Alligood and Holly J. Alligood, appeal from the judgment of the trial court in favor of the defendants, Anthony LaSaracina and Shelene LaSaracina. The plaintiffs claim that the court improperly found that the defendants could unilaterally obstruct the plaintiffs' right-of-way over the defendants' property. We agree and reverse the judgment of the trial court.

The following facts and procedural history are uncontested.[1] The plaintiffs are fee owners of the property located at 30 Eden Park Drive in Salem. The defendants are fee owners of an adjacent parcel of property located at 29 Eden Park Drive. The plaintiffs acquired their property by an executor's deed on December 21, 2000. The defendants acquired their property by a warranty

---

[1] The majority of facts referenced have been taken from a signed stipulation of facts that the parties filed with the court.

deed duly recorded on July 17, 1995. The plaintiffs' property is landlocked and can only be accessed by crossing the defendants' property. As a result, the defendants' property is subject to a right-of-way in favor of the plaintiffs for the purpose of ingress and egress. The right-of-way was first created by a warranty deed duly recorded on August 29, 1980.[2] It extends from Route 82 to the defendants' property where it terminates in a circular turnaround.[3] In or about 2000, just before the plaintiffs closed on their purchase of 30 Eden Park Drive, the defendants eliminated the circular turnaround at the end of the right-of-way.[4]

On May 30, 2001, the plaintiffs filed a complaint alleging that the defendants unlawfully altered the dimensions of the right-of-way and seeking temporary and permanent injunctions.[5] On September 16, 2008, following an evidentiary hearing, the court found that "[t]he right-of-way ends with a loop, and the defendants have obstructed one side of the loop." The court nevertheless found that "[t]he plaintiffs continue to have full access to their property from the other side of the loop" and denied the plaintiffs' request for an injunction, concluding that the defendants had "not unduly restricted the

---

[2] The same conveyance also granted the plaintiffs' predecessors in title the right to park cars on a portion of the right-of-way and further restricted the use of the defendants' property by prohibiting the erection of a structure or dwelling on the portion of the property north of the dwelling.

[3] On July 15, 1995, the plaintiffs' predecessors in title and the defendants entered into an "Agreement Re: Location of Right of way and Release of Right to Park" to define the location of the right-of-way. The agreement was recorded on July 17, 1995.

[4] The defendants filled in the westerly portion of the gravel turnaround with top soil, planted grass and physically obstructed the plaintiffs' passage over this portion of the right-of-way with a trampoline.

[5] The plaintiffs also claimed that the defendants violated the restrictive covenant prohibiting the erection of a structure or dwelling northerly of the northern face of the dwelling on their property. The court found that the defendants violated such restrictive covenant. The defendants' appeal followed and is addressed in *Alligood* v. *LaSaracina*, 122 Conn. App. 479, 999 A.2d 833 (2010).

plaintiffs' use of the right-of-way . . . ." This appeal followed.

On appeal, the plaintiffs claim that the standard of law applied by the court was incorrect and argue that, absent their consent, the defendants' alteration of the location and dimensions of the right-of-way was improper.[6] We agree.

Whether the court applied the appropriate legal standard presents a question of law subject to our plenary review. See *Bristol* v. *Tilcon Minerals, Inc.*, 284 Conn. 55, 83, 931 A.2d 237 (2007). Although not yet directly decided in Connecticut, the general rule is that "once the location of an easement has been selected or fixed, it cannot be changed by either the landowner or the easement owner without the other's consent." 25 Am. Jur. 2d, Easements and Licenses § 69 (2004). The majority of jurisdictions to consider the issue have adopted the general rule. See, e.g., *Edgell* v. *Divver*, 402 A.2d 395, 397–98 (Del. Ch. 1979) ("[t]he general rule is well established that an easement may not be relocated without the consent of the owners of both the dominant and servient estates"); *Carrollsburg* v. *Anderson*, 791 A.2d 54, 61 (D.C. 2002) ("as a general rule, the location of an easement, when once established, cannot be changed or the easement relocated without the mutual consent of the owners of the dominant and servient estates" [internal quotation marks omitted]); *Herren* v. *Pettengill*, 273 Ga. 122, 123, 538 S.E.2d 735 (2000) ("[t]he majority rule in the United States is that an easement with a fixed location cannot be substantially changed or relocated without the express or implied consent of the owners of both the servient estate and the dominant

---

[6] The plaintiffs also argue that the alterations to the right-of-way imposed a burden on the dominant estate and were not necessary to the normal use or development of the servient estate. Because we conclude that the defendants' unilateral changes to the location and dimensions of the right-of-way were improper, we do not reach the plaintiffs' additional claims.

estate, absent reservations contained in the instrument creating the easement").

In contrast, a minority of jurisdictions have taken an alternative approach endorsed by the Restatement (Third), Property, Servitudes § 4.8 (c) (3) (2000).[7] See, e.g., *Roaring Fork Club, L.P.* v. *St. Jude's Co.*, 36 P.3d 1229, 1236–37 (Colo. 2001); *M.P.M. Builders, LLC* v. *Dwyer*, 442 Mass. 87, 91, 809 N.E.2d 1053 (2004); *Lewis* v. *Young*, 92 N.Y.2d 443, 451–52, 705 N.E.2d 649, 682 N.Y.S.2d 657 (1998). Pursuant to the Restatement approach, the owners of a servient estate may unilaterally change the location or dimensions of an easement if the changes do not significantly lessen the utility of the easement, increase the burden on the easement holder or frustrate the purpose of the easement. See Restatement (Third), supra, § 4.8, comment (f). The Restatement rule "is designed to permit development of the servient estate to the extent it can be accomplished without unduly interfering with the legitimate interests of the easement holder." Id.

We conclude that the approach adopted by the majority of jurisdictions is a logical extension of current Connecticut case law. See *Coughlin* v. *Anderson*, 270 Conn. 487, 509, 853 A.2d 460 (2004) (owner of dominant estate may not vary location of fixed easement without consent of owner of servient estate); *Mackin* v. *Mackin*, 186 Conn. 185, 439 A.2d 1086 (1982) (affirming trial court's determination that defendants' relocation of right-of-way improper but setting aside judgment with

---

[7] The Restatement (Third), supra, § 4.8 (c) (3), provides in relevant part: "Unless expressly denied by the terms of an easement . . . the owner of the servient estate is entitled to make reasonable changes in the location or dimensions of an easement, at the servient owner's expense, to permit normal use or development of the servient estate, but only if the changes do not: (a) significantly lessen the utility of the easement, (b) increase the burdens on the owner of the easement in its use and enjoyment, or (c) frustrate the purpose for which the easement was created."

respect to damages). Accordingly, we adopt the majority approach.

Like many of the jurisdictions faced with this question, we believe that the attributes of the majority rule, namely, uniformity, stability, predictability and judicial economy, outweigh any increased flexibility offered by the Restatement approach. See *Herren* v. *Pettengill,* supra, 273 Ga. 124 (majority rule provides certainty in landownership); *Sweezey* v. *Neel,* 179 Vt. 507, 517–18, 904 A.2d 1050 (2006); *Crisp* v. *VanLaeken,* 130 Wn. App. 320, 325–26, 122 P.3d 926 (2005) (judicial relocation of established easements would introduce uncertainty in real estate transactions and invite endless litigation); *AKG Real Estate, LLC* v. *Kosterman,* 297 Wis. 2d 1, 23, 717 N.W.2d 835 (2006) (Restatement approach is catalyst for increased litigation and means for servient estate to reap windfall at expense of dominant estate). Moreover, unlike the Restatement approach, the majority rule encourages property owners to bargain for and consent to alterations that maximize the development and utility of *both* the dominant and servient estates. See *Herren* v. *Pettengill,* supra, 124 (if benefits of relocation become substantial enough, market should bring parties together, not courts); *Davis* v. *Bruk,* 411 A.2d 660, 665 (Me. 1980) (Restatement rule would deprive dominant estate owner of present security of property rights and confer windfall on servient estate owner who purchased property at price that reflected restraints already existing on property).

With the operative rule in mind, we now turn to the merits of the plaintiffs' claim. The court found, and the parties do not dispute, that the location of the easement is fixed by map,[8] that it ends in a circular turnaround on the defendants' property and that the defendants eliminated the circular turnaround. The defendants did

---

[8] See also footnote 3 of this opinion.

so without the plaintiffs' consent. Accordingly, pursuant to the majority rule, we conclude that the defendants' alteration of the plaintiffs' right-of-way was improper.

The judgment is reversed as to the finding that the defendants did not unduly restrict the plaintiffs' use of the right-of-way across the defendants' property and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.