******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

WESTON STREET HARTFORD, LLC *v.*
ZEBRA REALTY, LLC
(AC 40415)

DiPentima, C.J., and Sheldon and Moll, Js.*

*Syllabus*

The plaintiff sought a temporary and permanent injunction prohibiting the
defendant from, inter alia, maintaining a parking lot within an easement
granting the plaintiff a right-of-way over certain property owned by the
defendant. The defendant filed a counterclaim, seeking, inter alia, a
judgment declaring that it had the right to relocate the right-of-way at
its own expense provided that it would be similar in size to the existing
right-of-way and that it would not impose any additional burden on the
plaintiff, as well as a permanent injunction directing the plaintiff to
release the right-of-way upon its relocation by the defendant. The trial
court rendered judgment for the defendant on the plaintiff's complaint,
concluding that the plaintiff was not entitled to injunctive relief because
it had failed to establish that the defendant's actions were interfering
with the plaintiff's use of the right-of-way. The court also rejected the
defendant's counterclaim insofar as the defendant sought a right to
relocate the existing right-of-way and an order directing the plaintiff to
release the right-of-way upon its relocation. Thereafter, the defendant
appealed, and the plaintiff filed a cross appeal with this court. *Held*:

1. The trial court properly rendered judgment for the plaintiff on the counts
of the defendant's counterclaim relating to the defendant's request to
relocate the right-of-way and for an order directing the plaintiff to release
the right-of-way; notwithstanding the defendant's claim to the contrary,
there was no meaningful difference between the unilateral modification
of an easement that this court in *Alligood* v. *LaSaracina* (122 Conn.
App. 473) found to be improper and the unilateral relocation of an
easement that the defendant sought in the present case, as either change
is improper without the mutual consent of the landowner and the ease-
ment owner, and this court rejected the defendant's claim that *Alligood*
was inconsistent with Supreme Court precedent and declined to over-
rule *Alligood*.

2. The plaintiff could not prevail on its claim that the trial court improperly
rendered judgment in the defendant's favor on the plaintiff's complaint
and denied the plaintiff's request for injunctive relief: in concluding that
the plaintiff had failed to demonstrate that its inability to use the right-
of-way would necessarily result but for the issuance of the requested
injunction, and, thus, was not entitled to its requested injunctive relief,
the trial court applied the correct standard of law set forth in *Karls* v.
*Alexandra Realty Corp.* (179 Conn. 390), which requires a party seeking
injunctive relief to show that there a substantial probability that but for
the issuance of the injunction, the party seeking it will suffer irreparable
harm; moreover, the court did not abuse its discretion in denying the
plaintiff's request for injunctive relief under the circumstances of the
case and in light of the extraordinary nature of injunctive relief, as the
court fully acknowledged that parking in the right-of-way would interfere
with the plaintiff's access to the right-of-way but that this harm was not
likely to befall the plaintiff but for the issuance of the requested
injunction.

Argued January 22—officially released October 15, 2019

*Procedural History*

Action for, inter alia, a temporary and permanent
injunction prohibiting the defendant from maintaining
a parking lot within a right-of-way, and for other relief,
brought to the Superior Court in the judicial district
of Hartford, where the matter was transferred to the
judicial district of Tolland; thereafter, the defendant
filed a counterclaim; subsequently, the matter was tried

to the court, *Bright, J.*; judgment for the defendant on the complaint and in part for the plaintiff on the counterclaim, from which the defendant appealed and the plaintiff cross appealed to this court. *Affirmed.*

*Steven Lapp*, with whom, on the brief, was *Daniel J. Klau*, for the appellant-cross appellee (defendant).

*Mario R. Borelli*, with whom, on the brief, was *Frank A. Leone*, for the appellee-cross appellant (plaintiff).

*Opinion*

MOLL, J. The present case arises from a dispute between the plaintiff, Weston Street Hartford, LLC, and the defendant, Zebra Realty, LLC, concerning a right-of-way easement held by the plaintiff that runs over property owned by the defendant. The defendant has appealed and the plaintiff has cross appealed from the judgment rendered, after a court trial, on the plaintiff's complaint and the defendant's counterclaim. On appeal, the defendant claims that the trial court, in rendering judgment in favor of the plaintiff on counts one and two of the counterclaim, incorrectly determined that *Alligood* v. *LaSaracina*, 122 Conn. App. 473, 999 A.2d 836 (2010), applies to the present case and prohibits any landowner from relocating an easement without the consent of the easement holder. In the alternative, the defendant contends that the Restatement (Third), Property, Servitudes § 4.8 (3) (c), is a more logical extension of Connecticut easement law than the rule adopted by this court in *Alligood*.[1] On cross appeal, the plaintiff claims that, upon finding that the defendant's use of the servient estate interfered with the plaintiff's intended use of the easement, the court should have rendered judgment in its favor on its complaint and granted its request for an injunction prohibiting interference by the defendant. We disagree with both parties' claims and, accordingly, affirm the judgment of the trial court.

The following procedural history and facts, as found by the trial court, are relevant to the parties' claims. The plaintiff is the owner of real property located at 170 Weston Street in Hartford, and the defendant is the owner of adjacent real property located at 145 West Service Road in Hartford. The properties are located in an area zoned for commercial or industrial use. When facing Weston Street, the back right corner of the plaintiff's property abuts the rear of the defendant's property. The portion of the plaintiff's property that abuts the defendant's property was formerly known as Lot 13.

In 1979, Gennaro Russo transferred his ownership of 145 West Service Road to Dalchard Warehouse, Inc. (Dalchard Warehouse), by deed, which provided in relevant part that 145 West Service Road was subject to a right-of-way in favor of what was then Lot 13 (right-of-way).[2] At the time of this transfer, Russo still owned the lots that would become 170 Weston Street as it exists today, namely, Lots 6 through 13 of an area known as the Fox Press Subdivision. In 1980, Russo's ownership of Lots 6 through 12 was transferred to Charter Oak Bank & Trust Company (Charter Oak) by way of foreclosure by sale, and, thereafter, Russo transferred his ownership of Lot 13 to Charter Oak by quitclaim deed. The combined transferred parcels eventually became known as 170 Weston Street. Consequently, Lot 13 no longer exists as a separate lot.

In April, 1998, Dalchard Warehouse quitclaimed its interest in 145 West Service Road to Bechard, LLC. In November, 2006, Belchard, LLC, transferred the property to the defendant by warranty deed, which provided in relevant part that 145 West Service Road was encumbered by "[a] Right-of-Way, 25 feet in width, as reserved in a deed dated August 29, 1979 and recorded in Volume 1723 at Page 277 of the Hartford Land Records."

In June, 2011, the plaintiff acquired 170 Weston Street. The deed transferring ownership of 170 Weston Street to the plaintiff specifically references the right-of-way, describing it as follows: "[T]he right to use a 25 foot right-of-way for the benefit of that portion of these premises previously known as Lot No. 13, for ingress and egress to West Service Road as reserved in a deed from Gennaro A. Russo, Debtor in Possession to Dalchard Warehouse, Inc. Dated August 29, 1979 and recorded in Volume 1723, Page 277 of the Hartford Land Records."

In August, 2011, the plaintiff entered into a three year lease agreement with Capitol Transportation, LLC (Capitol Transportation), pursuant to which Capitol Transportation was to use a portion of the plaintiff's property at 170 Weston Street as a school bus terminal and storage and transportation facility. Thereafter, approximately 135 school buses and/or vans, which were used to transport students enrolled in the Hartford public and magnet schools, were regularly parked on the plaintiff's property in an area that includes, but is not limited to, former Lot 13. At this time, the defendant operated and continued to operate an adult entertainment establishment and night club, known as the Mynx Cabaret, on its property at 145 West Service Road. The parking lot surrounding the Mynx Cabaret contained eighty-five parking spaces, including twenty-five to thirty of which were located in the right-of-way.

In September, 2011, the plaintiff commenced an action against the defendant, seeking a temporary and permanent injunction prohibiting and restraining the defendant from maintaining a parking lot on the right-of-way or from obstructing the plaintiff's right to pass over the right-of-way. See *Weston Street Hartford, LLC* v. *Zebra Realty, LLC*, Superior Court, judicial district of Hartford, Docket No. CV-11-6025475-S (first action). The defendant filed a counterclaim, seeking, inter alia, a permanent injunction enjoining the plaintiff from asserting any right to use the right-of-way and a declaratory judgment with respect to the parties' rights to the right-of-way. See id.

On March 11, 2013, in the first action, the trial court rendered judgment, after a court trial, in favor of the defendant on the plaintiff's complaint and in favor of the plaintiff on the defendant's counterclaim. In its memorandum of decision, the court concluded that the

plaintiff had established the existence of the right-of-way but had failed to prove that the defendant's actions or inactions were materially interfering with the plaintiff's use of the right-of-way because one particular utility pole, which was located in the public right-of-way, was obstructing the right-of way, and the plaintiff had not established that the utility pole could be relocated. The court also concluded that the plaintiff's intended use would overburden the right-of-way because some of the buses that would be utilizing it would do so to travel to and from property not intended to be benefitted by the right-of-way, i.e., property other than former Lot 13, and, therefore, such use was not permitted. Additionally, the court rendered a declaratory judgment that the plaintiff was still the owner of the right-of-way and specified as follows: "The right-of-way shall run with the land benefitted, that being former Lot 13, and the land burdened, that being 145 West Service Road, whether there is other access to former Lot 13. The right-of-way to be maintained by the owner or owners of former Lot 13. The right-of-way may not be used to benefit any other property into which former Lot 13 was merged."[3]

Following the conclusion of the first action, the plaintiff began considering alternative uses for former Lot 13 involving the right-of-way. Between July and November, 2014, the plaintiff arranged for and paid over $60,000 to move three utility poles outside of the right-of-way, including the utility pole that was in the city of Hartford's (city) control. In March or April, 2015, the plaintiff notified the defendant that it was developing a new plan for former Lot 13.

In August, 2015, the plaintiff commenced the present action against the defendant. In its complaint, the plaintiff alleged, inter alia, that it was the owner of the right-of-way, that the defendant materially interfered and continues to materially interfere with the plaintiff's use of the right-of-way by maintaining a parking lot in the right-of-way and by failing to sign an application or a letter of authorization enabling the plaintiff to obtain a curb cut permit from the city, and that such interference has caused and will continue to cause irreparable injury to the plaintiff. The plaintiff sought the following relief: (1) a temporary and permanent injunction prohibiting and restraining the defendant from maintaining a parking lot within the right-of-way or from obstructing the plaintiff's right to use the right-of-way; (2) an order requiring the defendant to sign documentation that may be required to enable the plaintiff to obtain a curb cut; and (3) costs.

On November 20, 2015, the defendant filed an answer, special defenses, and a five count counterclaim. As part of its first special defense, the defendant alleged that the plaintiff's intended use will overburden and constitutes an impermissible misuse of the right-of-way. In

its counterclaim, the defendant alleged, inter alia, that: it has a right to relocate the right-of-way (count one); it would be equitable to deny the plaintiff's request for injunctive relief and to enter injunctive relief in favor of the defendant, compelling the plaintiff to release the right-of-way upon its relocation by the defendant (count two); the defendant was not materially interfering with the plaintiff's use of the right-of-way (count three); the defendant has no duty to sign curb cut permit applications or otherwise authorize the plaintiff to make unnecessary alterations and/or modifications to the defendant's property to make use of the right-of-way (count four); and a permanent injunction should enter prohibiting the plaintiff from making unnecessary alterations and/or modifications to the defendant's property to access the right-of-way (count five). The defendant sought a variety of relief, most relevantly: (1) a declaratory judgment that it has the right to relocate the right-of-way on its property, at its own cost and expense, such that the relocated right-of-way is substantially equal in dimension, utility, and convenience to the plaintiff as the current right-of-way and that the relocated right-of-way would not impose any additional burden on the plaintiff; and (2) a permanent injunction ordering the plaintiff to release the right-of-way upon its relocation by the defendant in the manner described previously.[4]

Meanwhile, in October, 2015, the plaintiff submitted a curb cut application to the city, which the city deemed unacceptable.[5] A curb cut was not necessary for the plaintiff to gain access to the right-of-way.[6] In November, 2015, with the assistance of a surveyor, the plaintiff began preparing a site plan for former Lot 13 upon which the plaintiff intended to construct a parking lot that would be accessed using the right-of-way.

In January, 2016, the defendant prepared two concept plans to relocate the right-of-way on its property. The defendant intended to reconfigure its parking area to maintain approximately the same number of parking spaces utilized by patrons while also providing the plaintiff with access across its property to former Lot 13. The plaintiff had no interest in either alternative, however, and would not consider any alternative to the right-of-way. The defendant did not establish that the city would approve these alternative concept plans.

On March 15, 2016, the plaintiff submitted a planning and zoning application to the city for approval of its site plan. According to the site plan, former Lot 13 would serve as a parking lot, containing seventy-nine parking spaces, and would be fenced off from the remainder of 170 Weston Street such that the only means of access to the parking lot would be by way of the right-of-way. The plaintiff's current tenants, Specialty Corporation, Inc. (Specialty),[7] and Hertz Corporation (Hertz), which operate a school bus depot and sell out of service rental cars, respectively, would use the

parking lot as an accessory to their principal uses of 170 Weston Street. On June 20, 2016, the plaintiff submitted a revised site plan. Per the revised site plan, the plaintiff intended for the parking lot to be used for passenger vehicle parking for tenants, employees, and invitees of Specialty and Hertz, and as passenger vehicle parking for concert and sporting event attendees. On July 12, 2016, the city approved the revised site plan. The plaintiff did not establish that it obtained from the city a permit or license to utilize former Lot 13 as a parking lot for public use, however.

On April 18, 2017, following a court trial held on July 12 and 13, 2016, and the submission of posttrial briefs from both parties, the court issued a memorandum of decision. With respect to the plaintiff's complaint, the court rendered judgment in favor of the defendant, concluding, inter alia, that the plaintiff was not entitled to injunctive relief because it had failed to establish that the defendant's actions were causing imminent harm or currently interfering with the plaintiff's use of the right-of-way. With respect to the defendant's counterclaim, the court rendered judgment in favor of the plaintiff on counts one, two, and five, dismissed the third count, and, with respect to the fourth count, issued a declaratory judgment that, on the basis of the facts as they existed before the court, the defendant had no duty or obligation to assist the plaintiff in obtaining a curb cut permit.

On May 5, 2017, the defendant appealed from the court's judgment on the first and second counts of its counterclaim.[8] On May 11, 2017, the plaintiff filed a cross appeal from the court's judgment on its complaint. Additional facts and procedural history will be provided as necessary.

I

We first address the defendant's claim on appeal. The defendant argues that, in rendering judgment in favor of the plaintiff on the defendant's counterclaim, the trial court erred in concluding that *Alligood* v. *LaSaracina*, supra, 122 Conn. App. 473, was controlling precedent. Specifically, the defendant contends that *Alligood* should be limited to its facts and should not be broadly applied so as to preclude the relocation, as opposed to the modification, of any right-of-way by the owner of servient land without the consent of the owner of the dominant estate. In the alternative, the defendant contends that *Alligood* is inconsistent with controlling Connecticut Supreme Court precedent, which has relied on the Restatement (Third) of Property in Connecticut easement cases, and that § 4.8 (3) (c) of the Restatement (Third) of Property is more consistent with general principles of Connecticut easement law and public policy. We disagree.

Central to the defendant's claim is the question of

whether a servient landowner must obtain consent from the owner of the dominant estate to relocate an easement on the servient estate. As this is a question of law, our review is plenary. See *Abrams* v. *PH Architects, LLC*, 183 Conn. App. 777, 788, 193 A.3d 1230, cert. denied, 330 Conn. 925, 194 A.3d 290 (2018) ("[i]t is axiomatic that matters of law are entitled to plenary review on appeal").

To answer this question, we first turn to *Alligood*. In *Alligood*, the defendants unilaterally altered a section of the plaintiffs' right-of-way across the defendants' property by eliminating the circular turnaround at the end of the right-of-way. *Alligood* v. *LaSaracina*, supra, 122 Conn. App. 475. On appeal, and in agreement with the plaintiffs, this court determined that the trial court applied the incorrect standard of law to the plaintiffs' request for injunctive relief and that the defendants' unilateral alteration of the location and dimensions of the right-of-way was improper. Id., 476. In so holding, we adopted and applied the general rule adhered to by a majority of jurisdictions, namely, that "once the location of an easement has been selected or fixed, it cannot be changed by either the landowner or the easement owner without the other's consent." (Internal quotation marks omitted.) Id.

Our adoption of the majority approach was not dependent upon any distinction between the relocation or modification of an easement. See id., 476–77 (collecting cases applying majority rule to easement modification and relocation). Rather, we adopted the majority approach, over that set forth in § 4.8 (3) (c) of the Restatement (Third) of Property, which provides: "Unless expressly denied by the terms of an easement, as defined in § 1.2, the owner of the servient estate is entitled to make reasonable changes in the location or dimensions of an easement, at the servient owner's expense, to permit normal use or development of the servient estate, but only if the changes do not . . . (c) frustrate the purpose for which the easement was created." We reasoned: "[W]e believe that the attributes of the majority rule, namely, uniformity, stability, predictability and judicial economy, outweigh any increased flexibility offered by the Restatement approach." *Alligood* v. *LaSaracina*, supra, 122 Conn. App. 478. Applying the majority rule to the factual circumstances of the case, we determined that the defendants' alteration of the plaintiffs' right-of-way was improper because "[t]he defendants did so *without the plaintiffs' consent*." (Emphasis added.) Id., 478–79. Accordingly, per our legal precedent, no meaningful difference exists between the unilateral modification of an easement, as in *Alligood*, and the unilateral relocation of an easement, as sought by the defendant in the present case; under the majority rule, either change is improper without consent from both the landowner and easement owner.[9]

Moreover, although the defendant contends that we should distinguish *Alligood* from the present case on the basis that *Alligood* involved the modification, rather than a relocation, of an easement—and, therefore, apply § 4.8 (3) (c) of the Restatement (Third) of Property instead of the majority rule—§ 4.8 (3) (c) does not support such distinction. As recited previously, § 4.8 (3) (c) of the Restatement (Third) of Property provides in relevant part: "Unless expressly denied by the terms of an easement . . . the owner of the servient estate is entitled to make reasonable changes in the *location or dimensions of an easement*, at the servient owner's expense, to permit normal use or development of the servient estate, but only if the changes do not . . . (c) frustrate the purpose for which the easement was created." (Emphasis added.) As demonstrated by its express terms, § 4.8 (3) (c) does not distinguish between the relocation and modification of an easement.[10]

Likewise, the defendant's contention that *Alligood* is inconsistent with our Supreme Court precedent is unsupported, as the defendant points to no case in which our Supreme Court has adopted § 4.8 of the Restatement (Third) of Property or suggested that § 4.8 is a necessary corollary to sections upon which our Supreme Court *has* relied, namely, §§ 4.9,[11] 4.10,[12] and 8.3[13] of the Restatement (Third) of Property, which concern the use and enforcement of servitudes. Moreover, in *Alligood*, we expressly acknowledged the intended purpose of § 4.8 of the Restatement (Third) of Property, namely, "to permit development of the servient estate to the extent it can be accomplished without unduly interfering with the legitimate interests of the easement holder," while rejecting it in favor of the majority rule. (Internal quotation marks omitted.) *Alligood* v. *LaSaracina*, supra, 122 Conn. App. 477.

By arguing further that *Alligood* is inconsistent with the general principles of Connecticut easement law and public policy, the defendant essentially asks that we overrule *Alligood*. "[I]t is axiomatic that one panel of this court cannot overrule the precedent established by a previous panel's holding. . . . As we often have stated, this court's policy dictates that one panel should not, on its own, [overrule] the ruling of a previous panel. The [overruling] may be accomplished only if the appeal is heard en banc." (Internal quotation marks omitted.) *LM Ins. Corp.* v. *Connecticut Dismanteling, LLC*, 172 Conn. App. 622, 632–33, 161 A.3d 562 (2017); see also *Graham* v. *Commissioner of Transportation*, 330 Conn. 400, 417, 195 A.3d 664 (2018) ("[t]he doctrine of stare decisis counsels that a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it" [internal quotation marks omitted]).

In the present case, relying on the majority rule

adopted in *Alligood*, the trial court rejected the first and second counts of the defendant's counterclaim, in which the defendant sought both a declaratory judgment that it has the right to relocate the right-of-way unilaterally and an injunction requiring the plaintiff to release its rights in the existing right-of-way if the relocated right-of-way were substantially equal in dimension, utility, and convenience. In accordance with our adoption of the majority approach in *Alligood*, and in light of our foregoing discussion, we decline to limit *Alligood* in the manner requested by the defendant, and we conclude that the trial court properly rendered judgment in favor of the plaintiff on counts one and two of the defendant's counterclaim.

## II

We turn now to the plaintiff's cross appeal. The plaintiff claims that, upon finding that the defendant's use of the servient estate interfered with the plaintiff's intended use of the easement, the trial court should have rendered judgment in the plaintiff's favor on its complaint and granted its request for an injunction prohibiting additional interference by the defendant. In support of its claim, the plaintiff argues that the court erred by holding the plaintiff to an incorrect and more burdensome standard with respect to whether it would suffer irreparable harm to its easement rights. The plaintiff argues in the alternative that the court abused its discretion when it denied its request for injunctive relief. We disagree.

We are mindful of the following standard of review. "A prayer for injunctive relief is addressed to the sound discretion of the court and the court's ruling can be reviewed only for the purpose of determining whether the decision was based on an erroneous statement of law or an abuse of discretion. . . . Therefore, unless the trial court has abused its discretion . . . the trial court's decision must stand. . . . How a court balances the equities is discretionary but if, in balancing those equities, a trial court draws conclusions of law, our review is plenary." (Citation omitted; internal quotation marks omitted.) *Commissioner of Correction* v. *Coleman*, 303 Conn. 800, 810, 38 A.3d 84 (2012), cert. denied sub nom. *Coleman* v. *Arnone*, 568 U.S. 1235, 133 S. Ct. 1593, 185 L. Ed. 2d 589 (2013).

## A

First, we address the plaintiff's argument that the court applied the incorrect legal standard when determining whether the plaintiff was entitled to injunctive relief. Specifically, the plaintiff argues that the court erroneously relied upon *Karls* v. *Alexandra Realty Corp.*, 179 Conn. 390, 426 A.2d 784 (1980), to require that it demonstrate an "actual disturbance" of its easement right in order to establish irreparable harm, even though Connecticut law requires only that the holder of an

easement right demonstrate the existence of a substantial probability of interference with such right. Therefore, according to the plaintiff, it demonstrated irreparable harm by virtue of the court's finding that parking in the right-of-way by the defendant's employees and customers will interfere with the plaintiff's intended use of the right-of-way.

The following legal principles and precedent are relevant to the plaintiff's argument. It is well established that "[a] party seeking injunctive relief must demonstrate that: (1) it has no adequate remedy at law; (2) it will suffer irreparable harm absent an injunction; (3) it will likely prevail on the merits; and (4) the balance of equities tips in its favor." (Internal quotation marks omitted.) *Wellswood Columbia, LLC* v. *Hebron*, 327 Conn. 53, 59 n.5, 171 A.3d 409 (2017). "[T]he owner of [an] easement is entitled to [injunctive] relief only if he can show that he will be disturbed or obstructed in the exercise of his right to use it." (Internal quotation marks omitted.) *Welles* v. *Lichaj*, 136 Conn. App. 347, 354, 46 A.3d 246, cert. denied, 306 Conn. 904, 52 A.3d 730 (2012).

In *Karls*, the trial court issued an injunction restraining the defendant[14] from using a fourteen foot wide right-of-way, which provided access to the plaintiffs' and defendant's properties, after concluding, inter alia, that the construction of the defendant's house violated certain zoning ordinances. *Karls* v. *Alexandra Realty Corp.*, supra, 179 Conn. 393–94. "The plaintiffs' central complaint [was] that the right-of-way [was] inadequate for use by six families and that such an excessive use would result in irreparable injury to them." Id., 395. On appeal, our Supreme Court considered, inter alia, whether the injunction issued by the trial court was improper in light of the facts found. Id., 399.

In making its determination, our Supreme Court was guided by several key legal principles governing the issuance of injunctions: "The issuance of an injunction is the exercise of an extraordinary power which rests within the sound discretion of the court, and the justiciable interest which entitles one to seek redress in an action for injunctive relief is at least one founded on the imminence of substantial and irreparable injury." (Internal quotation marks omitted.) Id., 401. In other words, "[t]he extraordinary nature of injunctive relief requires that the harm complained of is occurring or will occur if the injunction is not granted. Although an absolute certainty is not required, it must appear that there is a substantial probability that but for the issuance of the injunction, the party seeking it will suffer irreparable harm." Id., 402. "The plaintiff seeking injunctive relief bears the burden of proving facts which will establish irreparable harm as a result of that violation." Id., 401.

In consideration of the foregoing legal principles and the facts found by the trial court, our Supreme Court

in *Karls* concluded that it could not agree with the court's conclusion that the plaintiffs had satisfied their burden of proving the substantial likelihood that irreparable harm would result from the defendant's violation. Id., 401–402. Our Supreme Court reasoned: "[A]lthough the plaintiffs have shown that they may *possibly* suffer irreparable harm, i.e., emergency vehicles blocked by a car stuck in the right-of-way, they have failed to demonstrate that such harm is *imminent* or that it *will necessarily be caused by* the defendant's violation of the zoning regulations. In the absence of such a showing, an injunction cannot be issued." (Emphasis added.) Id. According to our Supreme Court, the harm complained of was not imminent in light of the trial court's finding that the alleged harm was only a possibility and the fact that the injunction would not become effective until one year after it was issued. Id., 403.

In the present case, the trial court concluded, inter alia, that "parking in the right-of-way by the defendant's employees and customers will interfere with the plaintiff's reasonably intended use of the right-of-way, at least during Specialty's hours of operation," but determined that the plaintiff did not establish irreparable harm. The court explained: "In this case, it is undisputed that the plaintiff's rights have not yet been disturbed. Specialty's buses are still parked on former Lot 13. The plaintiff has not constructed its planned parking lot. Nor is there any evidence that Specialty will take advantage of the fifty parking spaces [that] the plaintiff has committed to provide under the lease amendment. The position of the plaintiff here is similar to that of the plaintiffs in *Karls*. While it is entirely *possible* that its access to the right-of-way may be impaired, such impairment is *not imminent*. In fact, it is contingent on a number of events that have yet to occur. In addition, the court has no way of knowing if the defendant will still be operating in the manner it has been if and when the planned parking lot is built and is being used by Specialty's employees. For these reasons, the plaintiff is not entitled to the injunctive relief it has requested."[15] (Emphasis added.)

The foregoing explanation demonstrates that the court correctly applied *Karls* to the factual circumstances of the present case. Essentially, relying on *Karls*, the trial court concluded that the plaintiff had failed to demonstrate that the alleged harm (i.e., the plaintiff's inability to use of the right-of-way because of the defendant's use of its parking lot within the right-of-way) would necessarily result but for the issuance of the requested injunction; not only was the parking lot not yet constructed on former Lot 13, it was unclear to the court whether Specialty would ever use any of the parking spaces afforded to it under the amended lease; see footnote 7 of this opinion; or whether the defendant would be operating its business in the same manner once the parking lot was actually constructed.

Accordingly, we conclude that the trial court applied the correct standard of law when determining whether the plaintiff was entitled to injunctive relief.[16]

B

We next address the plaintiff's alternative argument that the trial court abused its discretion when it denied the plaintiff's request for injunctive relief. The plaintiff argues that a fair balancing of the equities supports the conclusion that an injunction should have been issued by the court in the present case.

The following legal principles are relevant to the plaintiff's argument. "The granting of an injunction rests within the sound discretion of the trial court and [i]n exercising its discretion, the court . . . may consider and balance the injury complained of with that which will result from interference by injunction. . . . The relief granted must be compatible with the equities of the case. . . . The action of the trial court will not be disturbed unless it constitutes an abuse of discretion." (Internal quotation marks omitted.) *Waterbury* v. *Phoenix Soil, LLC*, 128 Conn. App. 619, 627–28, 20 A.3d 1 (2011); see also *Baruno* v. *Slane*, 151 Conn. App. 386, 397 n.9, 94 A.3d 1230 ("[T]he granting of injunctive relief, which must be compatible with the equities of the case, rests within the trial court's sound discretion. . . . Those equities should take into account the gravity and wilfulness of the violation, as well as the potential harm to the defendants." [Emphasis omitted; internal quotation marks omitted.]), cert. denied, 314 Conn. 920, 100 A.3d 851 (2014). "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only [when] an abuse of discretion is manifest or [when] injustice appears to have been done." (Internal quotation marks omitted.) *Wethersfield* v. *PR Arrow, LLC*, 187 Conn. App. 604, 645, 203 A.3d 645, cert. denied, 331 Conn. 907, 202 A.3d 1022 (2019).

In the present case, as described previously, the court initially determined that "parking in the right-of-way by the defendant's employees and customers will interfere with the plaintiff's reasonably intended use of the right-of-way, at least during Specialty's hours of operation." In making this determination, the court acknowledged, inter alia, that "the plaintiff's intended use of former Lot 13 as a parking lot [was] far from theoretical"— due to the plaintiff's removal of the three utility poles obstructing the right-of-way, the plaintiff's submission of detailed site plans to the city, the city's approval of the revised site plan, and the creation of the amended lease with Specialty—and, "[t]hus, it [was] reasonably expected that the plaintiff *may someday* make use of the former Lot 13 as a parking lot for Specialty's employees and will use the right-of-way for access to that lot." (Emphasis added.) Thereafter, the court found that it

was possible that the plaintiff's access to the right-of-way may be impaired but concluded that such impairment was not imminent because "it [was] contingent on a number of events that [had] yet to occur," such as Specialty's use of fifty new parking spaces that it was provided under the amended lease agreement.

The foregoing discussion by the trial court demonstrates that it fully acknowledged that parking in the right-of-way would interfere with the plaintiff's access to the right-of-way but also recognized that this harm was not likely to befall the plaintiff but for the issuance of the requested injunction. Under these circumstances, and in light of the extraordinary nature of injunctive relief, we cannot say that the court abused its discretion when it denied the plaintiff's request for an injunction.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] On the appeal form filed by the defendant, the defendant indicated that, in addition to the trial court's judgment with respect to its counterclaim, it is appealing from the trial court's determination that the plaintiff's intended use of the easement at issue does not overburden the easement or the defendant's property. In its principal appellate brief, the defendant recognizes that it raised the matter of overburdening as a special defense to the plaintiff's complaint and that it was not aggrieved by the trial court's judgment on the plaintiff's complaint, which was rendered in its favor. The defendant nonetheless explains that it "intends to brief its claims of error arising from the trial court's analysis and decision on the issue of overburdening, as alternative grounds for affirmance" of the court's judgment on the plaintiff's complaint. In its appellate brief on the cross appeal, the defendant briefs, inter alia, these claims of error. Because we affirm the judgment of the trial court with respect to the plaintiff's complaint, we need not reach the defendant's alternative grounds for affirmance.

[2] Specifically, the 1979 deed provided that 145 West Service Road was "[s]ubject to a Right-of-Way in favor of that piece of real property designated Lot No. 13 on said map, said Right-of-Way being more particularly bounded and described as follows:

| "NORTHERLY: | By Lot No. 14B, as shown on said map, 341.63 feet, more or less; |
| "EASTERLY: | By West Service Road, 25 feet; |
| "SOUTHERLY: | By the non-burdened portion of Lot No. 14A, 345 feet, more or less; and |
| "WESTERLY: | By Lot No. 13, as shown on said map, 25 feet, more or less. |

"Said Right-of-Way is for the purpose of providing ingress and egress for all purposes, to said Lot No. 13 and shall run with the land benefited and the land burdened regardless whether there is other access to Lot No. 13. Said Right-of-Way to be maintained by the owner or owners of said Lot No. 13."

[3] The plaintiff did not appeal from the court's judgment in the first action.

[4] The defendant requested the following additional relief: a declaratory judgment that it has the right to use its property in any manner that does not unreasonably interfere with the plaintiff's use of the right-of-way, including using the area for parking subject to certain conditions; a declaratory judgment that the plaintiff has no right to make unnecessary alterations and/or modifications to the defendant's property to access the right-of-way, the plaintiff's intended alterations and/or modifications are unnecessary, and the defendant has no duty to sign curb cut permit applications or otherwise authorize the plaintiff to make unnecessary alterations and/or modifications to its property to access the right-of-way; a permanent injunction prohibiting the plaintiff from making unnecessary alterations and/or modifications to the defendant's property to access the right-of-way; costs;

and such other relief deemed fair, just, and equitable by the court.

[5] The city returned the plaintiff's curb cut application and noted that it required the submittal of full A-2 surveys for the plaintiff's and the defendant's lots. The plaintiff submitted an A-2 survey, but the defendant did not. Thus, the city never reconsidered the plaintiff's curb cut application.

[6] A curb does not obstruct access from West Service Road to the right-of-way, and, according to the trial court, the area at issue in the curb cut application appears to be traversable.

[7] Under the August 12, 2014 lease executed by the plaintiff and Specialty, Specialty had the full right to use and occupy former Lot 13. The trial court found that, pursuant to the terms of a February 29, 2016 amendment to that lease, however, "the plaintiff can require Specialty to remove its buses and vans from former lot 13 in exchange for Specialty having the right to utilize, for employee parking, a maximum of fifty of the [seventy-nine planned] parking spaces to be constructed."

[8] See footnote 1 of this opinion.

[9] The defendant argues that *Alligood* does not, and should not, prevent a servient landowner from *prospectively* obtaining court relief to compel the relocation of an easement over the unreasonable opposition of the easement holder. We disagree. If granted, such relief would be contradictory to the majority rule, which provides that the location of an easement cannot be changed without consent from both the landowner and the easement holder *once the location of an easement has been selected or fixed.*

[10] Furthermore, the defendant cites no authority, and we are aware of none, supporting the application of § 4.8 (3) (c) of the Restatement (Third) of Property in this manner.

[11] Section 4.9 of the Restatement (Third) of Property provides: "Except as limited by the terms of the servitude determined under § 4.1, the holder of the servient estate is entitled to make any use of the servient estate that does not unreasonably interfere with enjoyment of the servitude."

[12] Section 4.10 of the Restatement (Third) of Property provides: "Except as limited by the terms of the servitude determined under § 4.1, the holder of an easement or profit as defined in § 1.2 is entitled to use the servient estate in a manner that is reasonably necessary for the convenient enjoyment of the servitude. The manner, frequency, and intensity of the use may change over time to take advantage of developments in technology and to accommodate normal development of the dominant estate or enterprise benefited by the servitude. Unless authorized by the terms of the servitude, the holder is not entitled to cause unreasonable damage to the servient estate or interfere unreasonably with its enjoyment."

[13] Section 8.3 of the Restatement (Third) of Property provides: "(1) A servitude may be enforced by any appropriate remedy or combination of remedies, which may include declaratory judgment, compensatory damages, punitive damages, nominal damages, injunctions, restitution, and imposition of liens. Factors that may be considered in determining the availability and appropriate choice of remedy include the nature and purpose of the servitude, the conduct of the parties, the fairness of the servitude and the transaction that created it, and the costs and benefits of enforcement to the parties, to third parties, and to the public.

"(2) Except when failure to enforce servitudes in common-interest communities or general-plan developments provides the basis for modification or termination due to changed conditions under § 7.10, property owners or an association of property owners may enforce the servitudes against subsequent similar violations by the same or different parties unless, under the circumstances then prevailing, enforcement would be unreasonable or inequitable."

[14] The plaintiffs filed suit against multiple defendants in *Karls*, but we refer only to the defendant homeowner for ease of discussion.

[15] In the preceding paragraph of its memorandum of decision, the trial court stated: "The court agrees with the defendant that a claim of interference with an easement or right-of-way, as opposed to breach of a restrictive covenant, requires proof of irreparable harm, or, at the very least, that the holder of the easement's rights have been actually obstructed or disturbed. In fact, even in the cases relied upon by the plaintiff, the court held that injunctive relief was warranted because the defendant had in fact disturbed the plaintiff's rights." In light of this particular language, the plaintiff argues in part that the court incorrectly concluded that, in order to establish irreparable harm, the plaintiff must prove that "the holder of the easement's rights have been actually obstructed or disturbed." (Internal quotation marks omitted.) We disagree. Despite the court's inclusion of the clause "at the

very least," which suggests in isolation that the court believed that the plaintiff must meet a higher legal standard than our precedent requires, the court goes on to correctly apply *Karls* to the factual circumstances of the present case.

[16] In light of *Karls*, the plaintiff argues that interference with an easement in and of itself is sufficient to demonstrate the existence of a substantial probability of harm to an easement holder's rights, and it cites multiple cases in support, namely, *Leabo* v. *Leninski*, 182 Conn. 611, 438 A.2d 1153 (1981), *Gerald Park Improvement Assn.* v. *Bini*, 138 Conn. 232, 83 A.2d 195 (1951), *New London* v. *Perkins*, 87 Conn. 229, 87 A. 724 (1913), *Dewire* v. *Hanley*, 79 Conn. 454, 65 A. 573 (1907), *Schwartz* v. *Murphy*, 74 Conn. App. 286, 812 A.2d 87 (2002), cert. denied, 263 Conn. 908, 819 A.2d 841 (2003), cert. denied, 546 U.S. 820, 26 S. Ct. 352, 163 L. Ed. 2d 61 (2005), and *Simonds* v. *Shaw*, 44 Conn. App. 683, 691 A.2d 1102 (1997). We disagree. In each of these cases, there was no real question as to whether the plaintiffs would ever actually use the easements or whether the easements were or would be obstructed by the defendants; rather, the plaintiffs had already been using or attempting to use the easements in the manner intended and were prevented from doing so, or it was highly likely that they would be prevented from doing so, by the defendants' interference. By contrast, in the present case, the trial court was not convinced of the substantial probability that *but for the injunction* the plaintiff would be prevented from using the right-of-way in the manner intended because, although the court found that the parking in the right-of-way by the defendant's employees and customers *will interfere* with the plaintiff's reasonably intended use of the right-of-way, such harm was *not imminent* as the plaintiff had not yet constructed the planned parking lot on former Lot 13, there was no evidence before the court to suggest that Specialty would use the parking spaces in said parking lot, and the court "ha[d] no way of knowing if the defendant [would] still be operating in the manner it [had] been if and when the planned parking lot [was] built and [was] being used by Specialty's employees."

———————————————————